STATE OF NORTH CAROLINA v. MARTIN ALEXANDER RICHARDSON

No. 11A94

(Filed 8 March 1996)

**1. Indigent Persons § 5 (NCI4th)— appointment of counsel— motion by privately retained counsel to be appointed—no withdrawal**

The trial court correctly ruled that defendant was not indigent and refused to change the status of defendant's privately retained counsel to appointed counsel in a prosecution for first-degree murder, first-degree kidnapping, first-degree rape, first-degree sexual offense, and armed robbery where the court provided funds for an investigator and experts. Under N.C.G.S. § 15A-143, a defendant who has retained counsel who has made a general appearance on his behalf is no longer considered indigent within the meaning of the statutory framework; unless retained counsel is allowed to withdraw from the case, there is no requirement to redetermine defendant's status. Here defendant's retained counsels' general notice of appearance meant that they were required to represent defendant through the entry of final judgment, defense counsel acknowledged that they were in the case whether compensated or not and never moved to withdraw, and defense counsel continued their zealous representation of defendant throughout the case. N.C.G.S. § 7A-450(c); N.C.G.S. § 7A-455.

**Am Jur 2d, Criminal Law §§ 976, 989; Trial § 228.**

**Comment Note.—Constitutionally protected right of indigent accused to appointment of counsel in state court prosecution. 93 ALR2d 747.**

**2. Jury § 256 (NCI4th)— capital murder—jury selection— Batson challenge—first African-American peremptorily challenged**

The trial court did not err in a prosecution for first-degree murder, first-degree kidnapping, first-degree rape, first-degree sexual offense, and armed robbery by allowing the prosecution to exercise a peremptory strike against an African-American prospective juror. Although defendant argued that a pattern of strikes against African-American jurors could not be shown the first time the State struck such a juror, the trial court's question-

**STATE v. RICHARDSON**

[342 N.C. 772 (1996)]

ing of defense counsel with respect to the "pattern" was in response to counsel's use of the term; the court did not limit defense counsel to showing a pattern of discriminatory challenges in establishing a prima facie case of purposeful discrimination and defendant failed to show that racial discrimination was the basis of the prosecution's dismissal of this juror.

**Am Jur 2d, Jury §§ 234, 244.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

**3. Robbery § 76 (NCI4th)— armed robbery and murder—taking of property as afterthought—evidence sufficient**

The trial court did not err in a prosecution for first-degree murder, first-degree kidnapping, first-degree rape, first-degree sexual offense, and armed robbery by refusing to dismiss the armed robbery charge because defendant had stated that he did not notice the credit cards on which the charge was based until after he had killed the victim and was driving her car back to the mall, so that he possessed the credit cards for some time before he intended to steal them. There is sufficient evidence that defendant kidnapped the victim to rape and rob her and possessed the intent to permanently deprive her of her property from the moment he entered her car. The State is not bound by the statements of defendant which it has introduced where they are contradicted by other evidence; when viewed in the light most favorable to the State and giving the State every reasonable inference that may be drawn from the evidence, the evidence introduced at trial was sufficient. N.C.G.S. § 14-87(a).

**Am Jur 2d, Homicide § 46; Robbery §§ 17, 65.**

**4. Kidnapping and Felonious Restraint § 21 (NCI4th)— intent to inflict serious bodily harm—sufficiency of evidence**

The trial court did not err in a prosecution for first-degree murder, first-degree kidnapping, first-degree rape, first-degree sexual offense, and armed robbery by not dismissing the first-degree kidnapping charge on the grounds that there was insufficient evidence that defendant intended to inflict serious bodily harm on the victim at the time of the kidnapping. Although the victim agreed to take defendant where he wanted to go if he did not harm her, defendant locked the door after he got in the car, directed the victim to drive into the country and ordered her to

drive down a dead-end road, made sexual advances toward her, she agreed to have sexual intercourse only if defendant did not hurt her, and defendant shortly thereafter stabbed her several times.

**Am Jur 2d, Abduction and Kidnapping §§ 27, 48-50.**

**Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 699.**

5. **Criminal Law § 427 (NCI4th)— capital murder—guilt phase—prosecutor's arguments—not a comment on defendant's failure to testify**

The trial court did not err by failing to intervene *ex mero motu* to prevent the prosecutor from making closing arguments in the guilt phase which defendant contended improperly commented on defendant's right not to testify at trial. The prosecutor's argument that defendant "hasn't told the entire truth yet" concerned defendant's pretrial statements and was designed to prepare the jury for the ensuing analysis showing that defendant's statements did not comprise the whole truth. The purpose of N.C.G.S. § 8-54 is not to restrict the prosecutor from making such comments upon the evidence and drawing such deductions therefrom so long as the prosecutor does not call attention to defendant's failure to testify.

**Am Jur 2d, Trial §§ 577, 579.**

6. **Criminal Law § 1340 (NCI4th)— capital sentencing— felony murder—use of robbery as aggravator**

The trial court properly submitted the aggravating circumstance that the murder was committed while defendant was engaged in robbery, N.C.G.S. § 15A-2000(e)(5), where defendant was convicted of first-degree felony murder and the armed robbery was not the felony supporting the felony murder conviction. The issue was not the redundancy of aggravating circumstances, but whether an armed robbery accomplished in the context of a first-degree murder must be the motivation for the killing to constitute the (e)(5) aggravating circumstance. While the (e)(5) circumstance requires that the robbery and murder be part of the same criminal episode, the circumstance by its own language does not limit use of the robbery aggravator to cases where evidence shows that robbery was the motive for the killing, and the

STATE v. RICHARDSON

[342 N.C. 772 (1996)]

(e)(5) robbery circumstance is distinguishable from the (e)(6) pecuniary gain circumstance. The (e)(6) circumstance necessarily takes into account a defendant's motivation in committing a murder, while the (e)(5) circumstance deals strictly with the actions of a defendant within the same criminal episode involving the commission of a murder.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-*Gregg* cases. 66 ALR4th 417.**

7. **Criminal Law § 1340 (NCI4th)— capital sentencing—aggravating circumstances—murder committed during another crime—continuous transaction doctrine—instructions**

The trial court did not err in a capital sentencing proceeding in its instruction on the continuous transaction doctrine. Although defendant contends that the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance (murder committed during commission of another crime) excludes robberies committed as afterthoughts, once the State establishes a robbery and a use of force to achieve the robbery, the State's only burden is to show that the robbery and the use of force are transactionally related. When the (e)(5) aggravating circumstance uses the phrase "any robbery," the circumstance includes a robbery occurring during the same criminal episode as the murder itself.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.**

8. **Criminal Law § 1362 (NCI4th)— capital sentencing—mitigating circumstances—age of defendant—not submitted**

The trial court did not err in a capital sentencing hearing by not submitting the age of defendant at the time of the crime as a mitigating circumstance where defendant was twenty-three, came from a stable background, and had performed competently in school until dropping out in the tenth grade. There was no evidence that defendant was emotionally immature or suffered from impaired development.

Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.

9. **Criminal Law § 1363 (NCI4th)— capital sentencing—defendant's confession—requested nonstatutory mitigating circumstance—subsumed within submitted circumstance**

There was no prejudicial error in a capital sentencing proceeding where the trial court refused to submit as a nonstatutory mitigating circumstance that defendant had shown a moral core indicating a potential for rehabilitation by confessing at the prompting of a detective, but submitted the mitigating circumstance that defendant confessed to the crime and one or more jurors found that circumstance to exist and to have mitigating value. The refusal of a trial court to submit a nonstatutory mitigating circumstance that is sufficiently supported by the evidence is not error where the requested circumstance is subsumed by a mitigating circumstance that is submitted.

Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.

10. **Criminal Law § 1318 (NCI4th)— capital sentencing—instructions—racial considerations**

The trial court did not err in a capital sentencing hearing by refusing to instruct the jurors that they should prevent racial concerns from influencing their consideration of defendant's sentence. The trial court followed the directive of *Turner v. Murray*, 476 U.S. 28, allowing defense counsel wide latitude to question prospective jurors on the issue of racial bias and other issues of racial significance. *Turner* only requires that the trial court allow some examination of prospective jurors with respect to racial bias and is not authority for the proposition that a trial court in an interracial crime must instruct the jury to disregard racial considerations where defendant requests such an instruction.

Am Jur 2d, Homicide § 555; Trial § 1441.

11. **Criminal Law § 1152 (NCI4th)— Fair Sentencing Act—aggravating factor—defendant armed**

The trial court did not err when sentencing defendant for kidnapping under the version of the Fair Sentencing Act in effect at that time, N.C.G.S. § 15A-1340.1-.7 (1988), by finding in aggravation that defendant was armed at the time of the kidnapping.

Although defendant contended that the State was bound by his statement, which the State introduced, the State is not bound by an exculpatory statement that it introduced if there is other evidence tending to show the circumstances of the homicide in a different light. Here, the pathologist's testimony of abrasions consistent with a knife held to the victim's throat constitutes just such other evidence; moreover, the kidnapping continued to the time defendant killed the victim, so that defendant's own statement shows that he was armed with a deadly weapon during the kidnapping.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554.**

## 12. Criminal Law § 450 (NCI4th)— prosecutor's argument—defendant as animal

The trial court did not err in a capital sentencing hearing by not intervening *ex mero motu* when the prosecutor characterized defendant as an animal. Although the comparison of defendants to members of the animal kingdom is not sanctioned, the use of the term in the context of a discussion of the brutality of the injuries inflicted on the victim does not descend to the level of gross impropriety that would require the trial court to intervene *ex mero motu.*

**Am Jur 2d, Trial § 681.**

## 13. Criminal Law § 1373 (NCI4th)— death penalty—not disproportionate

A sentence of death for a first-degree murder was not disproportionate where defendant kidnapped the victim from a parking lot, forced her to drive to a secluded location, brutally raped her, and stabbed her several times, killing her. The jury found the aggravating circumstances that defendant committed the murder while perpetrating a robbery and that the murder was especially heinous, atrocious, or cruel; the death sentence has been upheld in numerous cases where the jury found the especially heinous, atrocious, or cruel circumstance; and a death sentence involving a first-degree murder victim who was also sexually assaulted has never been held disproportionate. The record supports the two aggravating circumstances found by the jury, there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other consideration and this case was not substantially similar to any case in which the death

penalty was found disproportionate but is more similar to certain cases in which the death sentence was found to be proportionate.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-*Gregg* cases. 66 ALR4th 417.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Helms, J., on 22 November 1993 in Superior Court, Union County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his robbery and kidnapping convictions was allowed by this Court on 1 May 1995. Heard in the Supreme Court 9 October 1995.

*Michael F. Easley, Attorney General, by G. Patrick Murphy, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was tried capitally upon indictments charging him with first-degree murder, first-degree kidnapping, first-degree rape, first-degree sexual offense, and robbery with a dangerous weapon in connection with the killing of Sharon Mary ("Sherry") Clark St. Germain. The jury returned verdicts finding defendant guilty of first-degree murder on the theory of felony murder, first-degree kidnapping, first-degree rape, and robbery with a dangerous weapon, but acquitting defendant of first-degree sexual offense. Following a separate capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death for the murder, and the trial court entered sentence in accord with that recommendation. The trial court arrested judgment for the first-degree

rape because it was the predicate felony supporting the felony murder conviction. The trial court sentenced defendant to consecutive terms of imprisonment for the remaining offenses.

Defendant appeals to this Court as a matter of right from the judgment and sentence of death imposed for first-degree murder. We allowed his motion to bypass the Court of Appeals on his appeal of the judgments entered for the offenses of first-degree kidnapping and robbery with a dangerous weapon. For the reasons set forth in this opinion, we conclude that defendant received a fair trial, free from prejudicial error, and that the sentence of death for first-degree murder is not disproportionate in this case.

Evidence presented at trial, including a statement made by defendant, tended to show that on 11 December 1992 defendant approached Sherry St. Germain as she sat in her car in the parking lot of the Monroe Mall and asked her if she could give him a ride. Defendant then got in the car through the passenger door and locked the door as he sat down. St. Germain told defendant that she would take him where he wanted to go as long as he did not hurt her. Defendant directed St. Germain to drive out into the country and instructed her to stop at the end of a road. He then made advances toward her, and she agreed to have sex with him as long as he did not hurt her and would let her go afterwards. After they had sex, defendant stabbed and killed St. Germain and pushed her body into a stream beside the road. A newspaper carrier found her body on 14 December 1992.

Defendant's first statement to police indicated that although he did not remember the circumstances that led to his being on the deserted road, he had seen the victim trying to climb out of the stream. In a later statement, he confessed to having committed the murder. He also told a cellmate that he "robbed the girl of her money, her body and her life." After killing St. Germain, defendant left her car at the Monroe Mall and made purchases with her credit cards that included a television set and an automobile battery.

Dr. Deborah Radisch testified at trial that either of the two stab wounds that the victim had suffered could have been fatal. One wound was in the right back, piercing both lungs and the esophagus, and was eight inches deep. The other was in the abdomen, perforating the liver, pancreas, stomach, and renal artery, and was also eight inches deep. The victim also had numerous contusions, abrasions,

and shallow puncture wounds indicative of a struggle, including linear abrasions to her neck consistent with a knife wound.

[1] Defendant first assigns error to the trial court's refusal to change the status of defendant's privately retained attorneys to appointed indigent counsel, arguing that the trial court's failure to switch counsel's status while providing funds for an investigator and experts requires reversal of defendant's convictions. On 13 January 1993, defendant was found by the trial court to be indigent, and L.K. Biedler, Jr., and Harry B. Crow, Jr., were appointed to represent defendant. On 24 February 1993, two other attorneys, John G. Plumides and T. Russell Peterman, entered a general notice of appearance after defendant's parents retained them to represent defendant in the case. On 1 March 1993, the trial court granted the motion of Biedler and Crow to withdraw as defense counsel. On 7 September 1993, Plumides and Peterman informed the trial court that defendant's parents were facing financial difficulties and had paid less than one-sixth of the fee they had agreed to pay counsel prior to trial. Plumides and Peterman therefore filed a motion for determination of indigency, asking that the trial court order the State to pay for defense counsel and other necessary expenses of representation. The trial court granted the motion as to expenses for experts, but refused to change counsel's status from retained to court-appointed. The record indicates that $26,500 of the $40,000 that defendant's parents promised to pay remains unpaid.

The framework for the disposition of this issue involves several statutory provisions. An indigent person for the purposes of appointment of counsel is one "who is financially unable to secure legal representation and to provide all other necessary expenses of representation." N.C.G.S. § 7A-450(a) (1995). N.C.G.S. § 7A-450(c) provides: "The question of indigency may be determined or redetermined by the court at any stage of the action or proceeding at which an indigent is entitled to representation." N.C.G.S. § 7A-455(a) provides for a determination of partial indigency in situations in which a defendant is unable to pay "a portion, but not all, of the value of the legal services rendered for him by assigned counsel." N.C.G.S. § 7A-450(b) provides that whenever a defendant is found to be indigent for purposes of appointment of counsel, "it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation." N.C.G.S. § 15A-143 provides that "[a]n attorney who enters a criminal proceeding without limiting the extent of his representation . . . undertakes to represent the defendant for whom the entry is made

at all subsequent stages of the case until entry of final judgment, at the trial stage." Defendant argues that 7A-450(b) and (c) and 7A-455, when read together, required the State to pay for whatever portion of the expenses of his trial representation that he could not afford after it became evident during the case that his parents were no longer able to pay these expenses. We do not agree.

Once defendant accepted the services of properly retained counsel and consented to the withdrawal of appointed counsel, he was no longer indigent within the meaning of 7A-450(a). His retained counsel's general notice of appearance pursuant to 15A-143 meant that Plumides and Peterman were required to represent him in the case through the "entry of final judgment." Plumides and Peterman themselves acknowledged that they were "in the case whether . . . compensated or not, and we understand that," and never moved to withdraw from the case. Plumides and Peterman continued their zealous representation of defendant throughout the case despite the possibility that their hard work would go uncompensated.

While defendant contends that N.C.G.S. § 7A-450(c) required the trial court to make a redetermination of defendant's indigent status for the purpose of appointive counsel in this case, this argument is without merit. Under N.C.G.S. § 15A-143, a defendant who has retained counsel who has made a general appearance on his behalf is no longer considered indigent within the meaning of the statutory framework; unless retained counsel is allowed to withdraw from the case, there is no requirement to redetermine defendant's status. Defendant cites *State v. Boyd*, 332 N.C. 101, 418 S.E.2d 471 (1992), and *State v. Hoffman*, 281 N.C. 727, 190 S.E.2d 842 (1972), for the proposition that "whenever a defendant's personal resources are depleted and he can demonstrate indigency, he is eligible for state funding of the remaining necessary expenses of representation." *Boyd*, 332 N.C. at 109, 418 S.E.2d at 475. He argues that the trial court incorrectly failed to apply this rule in its treating legal fees different from other expenses of representation. Both of these cases, however, are distinguishable from the case at bar. *Boyd* held only that a defendant who has retained counsel may still be indigent for the purposes of expert witnesses and other aspects of representation. We stated in *Boyd*, "We address here only the question whether defendant's motion for a state-paid mental health expert should have been denied, as it was, because defendant, although financially unable to employ the expert, was not represented by court-appointed counsel." *Id.* at 107, 418 S.E.2d at 475. While *Hoffman* involved a defendant who

could afford counsel at the time of his interrogation but not at trial, counsel in *Hoffman* never made a general appearance to represent defendant. As Plumides and Peterman made a general appearance for defendant here, defendant could not be considered indigent under our statutory scheme unless Plumides and Peterman were allowed to withdraw from the case. *State v. McDowell*, 329 N.C. 363, 407 S.E.2d 200 (1991). The trial court correctly ruled that defendant was not indigent for the purposes of appointment of counsel. Accordingly, this assignment of error is overruled.

[2] By another assignment of error, defendant contends that the trial court erred by allowing the prosecution to exercise a peremptory strike on prospective juror James Gause, an African-American. Defendant contends that the trial court erroneously based its ruling that defendant had not made a *prima facie* showing of purposeful racial discrimination on its view that such a showing requires proof of a pattern of strikes against African-American jurors and that such a pattern could not be shown the first time the State strikes a black juror.

There are several factors to be considered in determining whether defendant has established a *prima facie* showing of purposeful discrimination under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), and its progeny. They include defendant's race, the victim's race, the race of key witnesses, questions and statements made by the prosecutor during jury selection, and the repeated use of peremptory challenges against venire members of one race such that it tends to establish a pattern or the prosecution's use of a dispropor-tionate number of peremptory challenges to prospective jurors of that race. *State v. Ross*, 338 N.C. 280, 285, 449 S.E.2d 556, 561 (1994). Defendant argued at trial that a *prima facie* case of discrimination had been established by the prosecution's strike of Gause because (1) there were a limited number of venire members of defendant's race, and (2) Gause's answers were the same as those of jurors who had not been excused. Defendant contended that the obvious conclu-sion was that these factors demonstrated a "pattern of trying to get an all white [jury] to try this man." The trial judge then briefly questioned defense counsel, asking how the striking of one juror established a pattern.

Defendant's contention that the trial court misunderstood the law with respect to the showing of a *prima facie* case is erroneous. The

trial court's questioning of defense counsel with respect to the "pattern" was in response to counsel's use of the term "pattern" in arguing the circumstances surrounding the peremptory challenge. The trial court did not limit defense counsel to showing a pattern of discriminatory challenges as the method of establishing a *prima facie* case of purposeful discrimination. Shortly after the exchange noted by defendant, the trial court commented that "whatever reason they [have to exercise a challenge] is up to them until it reaches a point of showing that a jury is being selected . . . [in] a manner other than which is racially [neutral]. . . . I'm simply going to rule that that point hasn't been reached." The trial court's comment indicates that its ruling was based not on defendant's failure to establish a pattern of discriminatory challenges, but rather defendant's failure to establish discriminatory motivation for the peremptory challenge of Gause. The burden is on defendant to establish an inference of purposeful discrimination in the selection of a jury. *State v. Mitchell*, 321 N.C. 650, 654, 365 S.E.2d 554, 556 (1988). In this case, defendant has failed to show that racial discrimination was the basis of the prosecution's dismissal of Gause. In response to questioning from the trial court with respect to any "extreme hardship" that a potential juror might have in serving, Gause explained that he had a civil case on the trial calendar for the week following the beginning of defendant's trial and that his case had already been continued twice. The prosecution's questioning of Gause was consistent with that of other members of the jury pool, both those who served on the jury as well as those who were later dismissed. The prosecution's dismissal of Gause was the first time in the case that a peremptory strike had been used to excuse an African-American. Defendant has not shown a *prima facie* case of purposeful discrimination. *See generally State v. Ross*, 338 N.C. 280, 449 S.E.2d 556. This assignment of error is therefore overruled.

[3] Defendant next assigns error to the trial court's refusal to dismiss the charge of robbery with a dangerous weapon, arguing that the evidence showed that defendant did not form the intent to steal the victim's credit cards until after he had removed them from the victim's possession. Defendant stated that he drove the victim's car back to the Monroe Mall after the killing, but that he did not notice the Sears and Lowe's credit cards until he was driving the car. Therefore, defendant argues that the "intent to steal" component of robbery was not present because defendant, through the taking of the car, possessed the credit cards for some time before he "intended" to steal them.

We have said that under N.C.G.S. § 14-87(a), robbery with a dangerous weapon is (1) the unlawful taking or attempt to take personal property from the person or in the presence of another (2) by the use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened. *State v. Hope*, 317 N.C. 302, 305, 345 S.E.2d 361, 363 (1986). The general rule with respect to intent and robbery is that "the defendant must have intended to permanently deprive the owner of his property *at the time the taking occurred* to be guilty of the offense of robbery." *State v. Richardson*, 308 N.C. 470, 474, 302 S.E.2d 799, 802 (1983). In this case, there is sufficient evidence to support the finding that defendant kidnapped the victim to rape and rob her and possessed the intent to permanently deprive her of her property from the moment he entered her car. The evidence tended to establish that defendant, armed with a knife, entered St. Germain's car and forced her to drive to a remote location; after killing St. Germain, defendant took her car and drove back to the mall. St. Germain last spoke with her mother at around 5:30 p.m. on 11 December 1992. Defendant used one of St. Germain's cards to purchase a television set at 8:34 p.m. on the same date. Four credit cards were found at defendant's house, including two that he claimed he had thrown away. While defendant indicated in his confession that he did not notice the credit cards until after he had completed the killing and was headed back to the mall in St. Germain's car, the State is not bound by the statements of defendant it has introduced into evidence where they are contradicted by other evidence. *State v. Carter*, 335 N.C. 422, 430, 440 S.E.2d 268, 272 (1994). When viewed in the light most favorable to the State and giving the State every reasonable inference that may be drawn from the evidence, *see State v. Herring*, 322 N.C. 733, 740, 370 S.E.2d 363, 367 (1988), the evidence introduced at trial was sufficient to support a reasonable finding of each element of robbery with a dangerous weapon. This assignment of error is overruled.

[4] Defendant next assigns error to the trial court's failure to dismiss the first-degree kidnapping charge against him, contending that there was insufficient evidence to find that at the time of the kidnapping, he intended to inflict serious bodily harm on St. Germain. Kidnapping is defined in relevant part as follows:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty

of kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed . . . .

N.C.G.S. § 14-39(a)(3) (Supp. 1995). The test for sufficiency of the evidence in a criminal case is whether substantial evidence of all elements of the offense charged has been presented; this Court will find the evidence to be sufficient if any rational trier of fact could find beyond a reasonable doubt that defendant committed the offense. *State v. Taylor*, 337 N.C. 597, 604, 447 S.E.2d 360, 365 (1994). There was substantial evidence in this case to prove that defendant kidnapped St. Germain for the purpose of doing "serious bodily harm." Although St. Germain agreed to take defendant where he wanted to go if he did not harm her, after defendant got in the car, he locked the door. Defendant directed St. Germain to drive out into the country and ordered her to drive down a dead-end road, where he made sexual advances toward her. St. Germain agreed to have intercourse with defendant only if defendant did not hurt her; shortly thereafter, defendant stabbed St. Germain several times.

In *State v. Thompson*, 306 N.C. 526, 294 S.E.2d 314 (1982), we ruled that there was ample evidence from which a jury could conclude that the defendant removed the victim for the purpose of stealing her possessions and committing sexual offenses against her where the defendant pushed the victim into her car as she was getting out, drove her to a deserted area outside the city limits, forced her to engage in sexual intercourse, and then left her at a store. The evidence in this case is as strong, if not stronger, than that in *Thompson*. This assignment of error is overruled.

[5] By another assignment of error, defendant contends that the trial court erred in failing to intervene *ex mero motu* to prevent the prosecutor from making improper comments during closing arguments in the guilt determination phase of his trial. Defendant contends that three portions of the prosecutor's closing argument improperly commented on defendant's right not to testify at trial:

> The evidence that was presented in this case, ladies and gentlemen, was presented and uncontradicted. What I mean by that is there is no evidence to contradict the evidence that was presented.

STATE v. RICHARDSON

[342 N.C. 772 (1996)]

. . . .

The State's going to argue to you that up to this point in time the defendant has yet to tell the entire truth. He hasn't told the entire truth yet. And the State is going to show to you based on the testimony that's been presented in this case why he hasn't told the truth.

. . . .

Now, what evidence you say could we possibly have about that scenario? Um, because no witnesses saw that. There's no witnesses. Mr. Richardson didn't state that in his testimony. Or, excuse me, in his statement. Didn't refer to that particular scenario in this case.

Defendant contends that the prosecutor's argument violated defendant's constitutional rights in that (1) it improperly commented on defendant's right not to testify, and (2) it punished defendant for availing himself of his right to put the State to its proof.

While the prosecution is forbidden by both the federal Constitution, *see Griffin v. California,* 380 U.S. 609, 615, 14 L. Ed. 2d 106, 110 (1965), and state statute, *see* N.C.G.S. § 8-54 (1986), from commenting on the failure of a defendant to testify at trial, a prosecutor's statement that the State's evidence was uncontradicted does not constitute an improper reference to defendant's failure to testify. *State v. Smith,* 290 N.C. 148, 226 S.E.2d 10, *cert. denied,* 429 U.S. 932, 50 L. Ed. 2d 301 (1976). When defendant does not object to comments made by the prosecutor during closing arguments, only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken. *State v. Johnson,* 298 N.C. 355, 368-69, 259 S.E.2d 752, 761 (1979). The prosecutor's argument that defendant "hasn't told the entire truth yet," rather than referring to defendant's failure to testify, concerned defendant's pretrial statements. This comment was designed to prepare the jury for the prosecutor's ensuing analysis showing that defendant's statements did not comprise the whole truth. The prosecutor indicated as much when telling the jury that the State "is going to show you *based on the testimony that's been presented in this case* why he hasn't told the truth." (Emphasis added.) The purpose of N.C.G.S. § 8-54 is not to restrict the prosecutor from making such

STATE v. RICHARDSON

[342 N.C. 772 (1996)]

comments upon the evidence and drawing such deductions therefrom so long as the prosecutor does not call attention to defendant's failure to testify. *Smith*, 290 N.C. at 167, 226 S.E.2d at 21. The prosecutor's arguments did not improperly comment on defendant's failure to testify. This assignment of error is without merit and is overruled.

**[6]** Defendant next assigns error to the trial court's instruction to the jury during the capital sentencing proceeding with respect to questions from the jury about an aggravating circumstance. During the jury's sentencing deliberations, the jury foreperson asked questions regarding the aggravating circumstance that the murder was committed while defendant was engaged in the commission of robbery. *See* N.C.G.S. § 15A-2000(e)(5) (Supp. 1995). These questions had to do with whether the jury could find this aggravating circumstance only if it found that defendant murdered the victim for the purpose of robbing her.

The trial court had initially instructed the jury that it could find the (e)(5) circumstance from the evidence in this case if it found that

when the defendant killed the victim, the defendant was taking and carrying away credit cards from the person and presence of Sherry St. Germain, without her voluntary consent, by violence or by putting her in fear, the defendant knowing that he was not entitled to take it and intending at that time to deprive her of its use permanently . . . .

After receiving questions from the jury about the timing of the robbery with respect to the killing and whether the aggravating circumstance required proof that the murder was committed because of the robbery, the trial court reinstructed the jury that

the first aggravating factor [sic] for you to consider is, was this murder committed by the defendant while the defendant was engaged in the commission of robbery?

Robbery is the taking and carrying away any personal property of another from her person or in her presence without her consent, by violence or by putting her in fear, with the intent to deprive her of its use permanently, the taker knowing that he is not entitled to take it. A killing is committed in the commission of robbery when there is no break in the chain of events leading from the act causing death to the robbery.

STATE v. RICHARDSON

[342 N.C. 772 (1996)]

Defendant argues that the instruction did not properly define the proof necessary for the jury to find this circumstance, as proof of the (e)(5) circumstance requires a closer nexus between the felony and the killing.

We preliminarily note that this case does not involve a situation like that encountered in *State v. Cherry*, 298 N.C. 86, 257 S.E.2d 551 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 796 (1980). While this Court ruled in *Cherry* that a robbery could not be used to aggravate a first-degree felony murder through the (e)(5) circumstance where the robbery was an essential element of the capital murder conviction, this case involves a robbery in the context of a first-degree felony murder in which the predicate felony supporting the first-degree murder conviction was not the robbery. This Court enumerated the rule barring the "double counting" of evidence with respect to aggravating circumstances in *State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446 (1987). In *Quesinberry*, a majority of this Court stated that

> in the context of a robbery-murder it is neither appropriate nor equitable to submit a statutorily-enumerated aggravating factor that overlaps with another. It is apparent that, in the particular context of a premeditated and deliberate robbery-murder where evidence is presented that the robbery was attempted or effectuated for pecuniary gain the submission of both the aggravating factors enumerated at N.C.G.S. 15A-2000(e)(5) [robbery] and (6) [pecuniary gain] is redundant and that one should be regarded as surplusage. We therefore hold that it was error to submit both of these aggravating factors to the jury.

*Id.* at 239, 354 S.E.2d at 453.

*Quesinberry* was distinguishable from the situation in *State v. Oliver*, 302 N.C. 28, 274 S.E.2d 183 (1981), in which this Court held that when robbery is the underlying felony in a felony murder conviction, the trial court was allowed to submit the (e)(6) pecuniary gain aggravating circumstance. As the robbery constitutes an essential element of the felony murder in such situations, the focus with respect to the guilt phase is on a defendant's conduct. In the capital sentencing proceeding, however, the focus of the (e)(6) circumstance is on a defendant's motive in committing the murder and does not require proof that defendant actually committed the underlying felony of robbery. *Id.* at 62, 274 S.E.2d at 204.

### STATE v. RICHARDSON

[342 N.C. 772 (1996)]

Defendant contends that *Oliver* and *Quesinberry* dictate the conclusion that, since the scope of the (e)(5) circumstance is different from that of felony murder, the (e)(5) circumstance requires both proof that the robbery and killing were committed as part of the same criminal episode and proof that the robbery was the motive for the killing. This argument, however, misinterprets this Court's holding in *Quesinberry*. The majority did not hold in *Quesinberry* that the submission of both the (e)(5) and (e)(6) aggravating circumstances was error because both circumstances dealt with defendant's motive for the murder. *Quesinberry* merely stands for the proposition that different aggravating circumstances cannot be submitted to aggravate a first-degree murder when "one [circumstance] plainly comprises the other." *Quesinberry*, 319 N.C. at 238, 354 S.E.2d at 452. The Court acknowledged with respect to the (e)(6) circumstance that "situations are conceivable in which an armed robber murders motivated by some impulse other than pecuniary gain," *id.*, but concluded that the same evidence constituted proof of both circumstances in that case.

In this case, however, the issue is not the redundancy of aggravating circumstances, but whether an armed robbery accomplished in the context of a first-degree murder must be the motivation for the killing to constitute the (e)(5) circumstance. While the (e)(5) circumstance does require that the robbery and the murder be part of the same criminal episode, a *Quesinberry/ Oliver*-type analysis is inappropriate in this case. The (e)(5) circumstance by its own language does not limit use of the robbery aggravator to cases where evidence shows that robbery was the motive for the killing, as it states in relevant part that a murder will be aggravated where

> [t]he capital felony was committed while the defendant was engaged, or was an aider or abettor, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any homicide, robbery, rape or a sex offense . . . .

N.C.G.S. § 15A-2000(e)(5). Furthermore, the (e)(5) robbery circumstance is distinguishable from the (e)(6) pecuniary gain circumstance. The (e)(6) circumstance necessarily takes into account a defendant's motivation in committing a murder, while the (e)(5) circumstance deals strictly with the actions of a defendant within the same criminal episode involving the commission of a murder. We hold that the trial court properly submitted the (e)(5) circumstance in this situation where defendant was convicted of first-degree felony mur-

der and the armed robbery was not the felony supporting the felony murder conviction. This argument is without merit.

**[7]** Defendant further argues with respect to this assignment of error that the trial court's instruction on the continuous transaction doctrine was erroneous. He contends that, as a robbery committed as an afterthought cannot be the motive for a murder, the (e)(5) circumstance excludes robberies committed as afterthoughts. While defendant contends that the phrase "while the defendant was engaged . . . in the commission of . . . any robbery" means that the murder and the robbery have to be committed simultaneously, thereby excluding afterthought robberies, defendant misconstrues the statute's plain language. In *State v. Handy*, 331 N.C. 515, 419 S.E.2d 545 (1992), this Court held that neither the commission of armed robbery in the context of a killing nor the commission of felony murder based on armed robbery is contingent upon "whether the intention to commit the taking of the victim's property was formed before or after the killing." *Id.* at 529, 419 S.E.2d at 552. Accordingly, the focus of the offense of armed robbery in the context of a killing is not the time of the robbery, but the use of force to accomplish the robbery; once the State establishes a robbery and a use of force to achieve the robbery, the State's only burden is to show that the robbery and the use of force are transactionally related. Therefore, when the (e)(5) aggravating circumstance uses the phraseology "any robbery," the circumstance includes a robbery occurring during the same criminal episode as the murder itself. This assignment of error is overruled.

**[8]** Defendant next assigns as error the trial court's refusal to submit as a mitigating circumstance his age at the time of the crime. In *State v. Bowie*, 340 N.C. 199, 456 S.E.2d 771, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 435 (1995), we held that "chronological age is not the determinative factor with regard to this mitigating circumstance. The defendant's immaturity, youthfulness, or lack of emotional or intellectual development at the time of the crime must also be considered." *Id.* at 203, 456 S.E.2d at 773 (citations omitted). While Bowie was twenty years old at the time he committed the murder at issue, defendant in this case was twenty-three. The evidence at sentencing in this case tended to show that defendant came from a stable background and had performed competently in school until dropping out in the tenth grade. There simply was no evidence indicating that defendant was emotionally immature or suffered from impaired development. This case is distinguishable from that in *State v. Turner*, 330 N.C. 249, 410 S.E.2d 847 (1991), where the defendant

grew up in a dysfunctional environment with no stability or guidance and was emotionally neglected and abused as a child. *Id.* at 268-69, 410 S.E.2d at 858. This assignment of error is without merit and is overruled.

[9] By another assignment of error, defendant argues that the trial court should have submitted as a mitigating circumstance that defendant confessed at the prompting of Detective Eubanks, showing that defendant has a "moral core that indicates the potential for rehabilitation." Assuming *arguendo* that there was evidence to support this mitigating circumstance as presented to the trial court, any error caused by the failure of the trial court to submit the circumstance was harmless. The trial court submitted the mitigating circumstance that the "defendant confessed to the crime," and one or more jurors found this circumstance to exist and to have mitigating value. The refusal of a trial court to submit a nonstatutory mitigating circumstance that is sufficiently supported by the evidence is not error where the requested circumstance is subsumed, as here, by a mitigating circumstance that is submitted. *State v. Lee*, 335 N.C. 244, 288, 439 S.E.2d 547, 570, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 162 (1994). Accordingly, this assignment of error is overruled.

[10] Defendant's next assignment of error concerns the trial court's refusal to give an instruction with respect to racial considerations. Defendant contends that the failure to give the proposed instruction, which would have told the jurors that they should prevent racial concerns from influencing their consideration of defendant's sentence, violated his constitutional rights under the Eighth and Fourteenth Amendments to the Constitution of the United States. The United States Supreme Court noted the importance of dealing with the issue of racial bias within the jury in *Turner v. Murray*, 476 U.S. 28, 90 L. Ed. 2d 27 (1986). We discussed the scope of *Turner* in *State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288 (1991):

In *Turner v. Murray*, the United States Supreme Court held that a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. This rule, the Court announced, is "minimally intrusive," and the "trial judge retains discretion as to the form and number of questions on the subject, including the decision whether to question the venire individually or collectively."

*Id.* at 13, 409 S.E.2d at 295 (citation omitted) (quoting *Turner*, 476 U.S. at 37, 90 L. Ed. 2d at 37) (emphasis omitted). In this case, the trial court followed the directive of *Turner*, allowing defense counsel wide latitude to question prospective jurors on the issue of racial bias and other issues of racial significance. *Turner* only requires that the trial court allow some examination of *prospective* jurors with respect to racial bias. *Turner* is not authority for the proposition that a trial court in the trial of an interracial crime must instruct the jury to disregard racial considerations where defendant requests such an instruction. This assignment of error is overruled.

[11] By another assignment of error, defendant argues that the trial court erred in finding as an aggravating factor under the version of the Fair Sentencing Act in effect at that time, *see* N.C.G.S. § 15A-1340.1-.7 (1988), that defendant was armed at the time of the kidnapping. Defendant contends that there was no evidence that defendant was armed during the time period beginning when he entered St. Germain's car and ending when they arrived at the scene of the murder. Dr. Radisch's testimony, however, indicated that there were linear abrasions on St. Germain's throat that were consistent with a knife wound; these abrasions give rise to the reasonable inference that defendant held a knife to St. Germain's throat while he forced her to drive out into the country. Defendant argues that the State is not entitled to use this inference because it is bound by defendant's statement, which the State introduced. We held in *State v. Carter*, 335 N.C. 422, 430, 440 S.E.2d 268, 272 (1994), that the State is not bound by an exculpatory statement that it introduced if there is other evidence tending to show the circumstances of the homicide in a different light. Dr. Radisch's testimony constitutes just such "other evidence." Furthermore, even if defendant's contention that he was not armed during the trip from the mall out into the country were to be valid, sufficient evidence to support the aggravator still exists. As the kidnapping continued from the time defendant began his restraint of St. Germain to the time that he killed her, defendant's own statement shows that he was armed with a deadly weapon during the kidnapping. This assignment of error is without merit and is overruled.

[12] Another assignment of error concerns a statement made by the prosecutor during closing arguments in the capital sentencing proceeding. Defendant contends that the trial court erred in its failure to intervene *ex mero motu* when the prosecutor characterized defendant as an "animal" in describing the violent nature of the attack on St. Germain. It is axiomatic that counsel are given wide latitude in argu-

STATE v. RICHARDSON

[342 N.C. 772 (1996)]

ments to the jury and are permitted to argue the evidence that has been presented and all reasonable inferences that can be drawn from that evidence. *State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). We have noted that we do not sanction comparisons of criminal defendants to members of the animal kingdom. *State v. Hamlet*, 312 N.C. 162, 173, 321 S.E.2d 837, 845 (1984). However, in *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991), we held that a prosecutor's comparative use of the term "animal" did not prejudice the defendant given the isolated nature of the commentary. So it is in the present case. The prosecutor's singular use of the term in the context of a discussion of the brutality of the injuries inflicted on St. Germain does not descend to the level of gross impropriety that would require the trial court to intervene *ex mero motu*. Therefore, this assignment of error is overruled.

With commendable candor, defendant also raises six additional assignments of error that he concedes have been decided contrary to his position previously by this Court. He raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule these assignments of error.

[13] Having concluded that defendant's trial and separate capital sentencing proceeding were free from prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the two aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

**STATE v. RICHARDSON**

[342 N.C. 772 (1996)]

In the present case, defendant was convicted of first-degree murder based on the theory of felony murder with first-degree rape as the underlying felony. The jury found as aggravating circumstances that defendant committed the murder while engaged in the commission of a robbery, N.C.G.S. § 15A-2000(e)(5), and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). One or more jurors found the following mitigating circumstances: (1) defendant had no significant history of prior criminal activity, (2) defendant was a person of good character and was well-liked in his community prior to his arrest (3) defendant had never physically abused any human being prior to 11 December 1992, (4) defendant confessed to the crimes charged, (5) defendant told the authorities where to locate the credit cards and subsequently called his mother so that the credit cards could be located and turned over to police, (6) defendant confessed because he felt an emotional need to tell someone about his involvement in the murder, (7) defendant assisted elderly neighbors in his community by picking up groceries for them and driving them wherever they needed to go, (8) defendant was a help to his mother and father in caring for the grandchildren while his parents were at work, (9) defendant is a caring and loving brother who has always provided close companionship for his brothers and sisters, (10) defendant was a well-behaved and well-liked student who had no history of violence or trouble and was well-liked by his teachers in school, (11) defendant was reared by hard-working parents as one of seven children and worked to help out the family while at home, and (12) the catchall mitigating circumstance.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We find this case is not substantially similar to any case in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. Each of those cases is distinguishable from the present case.

In *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988), the defendant was convicted of first-degree murder based on the theory of felony murder with pecuniary gain as the only aggravating circumstance. The jury found several mitigating circumstances, including that defendant was under the influence of mental or emotional disturbance at the time of the crime.

STATE v. RICHARDSON

[342 N.C. 772 (1996)]

In *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987), the defendant was one of four individuals who was involved in the beating death of a robbery victim. Again, the defendant was found guilty of felony murder, and only one aggravating circumstance was found, that the crime was especially heinous, atrocious, or cruel. The Court, in finding that the death sentence was disproportionate, noted that none of the defendant's accomplices were sentenced to death, although they "committed the same crime in the same manner." *Id.* at 27, 352 S.E.2d at 664. Furthermore, the Court deemed it important that the defendant was only seventeen. The jury found, in contrast to the present case, that defendant suffered from impaired capacity to appreciate the criminality of his conduct, that he was under the influence of a mental or emotional disturbance at the time of the murder, and that his age at the time of the crime had mitigating value.

In *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988), the defendant was convicted of first-degree murder for mistakenly shooting the victim in a parking lot during an argument with the victim's friend. The only aggravating circumstance found was that the murder was part of a course of conduct which included the commission by the defendant of other crimes of violence against another person or persons. The Court found that the "seemingly senseless shooting simply did not contain the viciousness and the cruelty present" in other death cases that involved only the "course of conduct" aggravating circumstance. *Id.* at 234, 341 S.E.2d at 731.

In *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985), the defendant, after drinking all day, robbed and stabbed a man, killing him. The Court concentrated on the fact the defendant had been drinking heavily all day and wanted to kill the victim to buy more liquor.

In *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984), the evidence was speculative as to how the murder occurred or how defendant acted when he encountered the victim, a law enforcement officer. This Court emphasized the "unqualified cooperation" of the defendant during the investigation.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983), the defendant shot his victim after the defendant had spent the night drinking. There was no motive for the killing, and immediately after the victim was shot, defendant sought medical help for the victim.

STATE v. RICHARDSON

[342 N.C. 772 (1996)]

In *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983), the victim was shot twice in the head. The defendant had flagged down the victim's car earlier, telling his companions that he intended to rob the victim. This court found the death sentence disproportionate because there was "no evidence of what occurred after defendant left with the victim." *Id.* at 46, 305 S.E.2d at 717.

In this case, defendant kidnapped Sherry St. Germain from a parking lot, forced her to drive to a secluded location, brutally raped her, and stabbed her several times, killing her. The jury found aggravating circumstances that defendant committed the murder while perpetrating a robbery and that the murder was especially heinous, atrocious, or cruel. We have upheld the death sentence in numerous cases where the jury found the heinous, atrocious, or cruel circumstance. Furthermore, this Court has never found a death sentence disproportionate in a case involving a victim of first-degree murder who was also sexually assaulted. The case *sub judice* is distinguishable from the seven cases in which we have held the death sentence to be disproportionate.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in this statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say here that we conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment. Accordingly, we conclude that the sentence of death recommended by the jury and ordered by the trial court in the present case is not disproportionate.

For the foregoing reasons, we hold that the defendant received a fair trial, free from prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO. 93CRS347, FIRST-DEGREE MURDER: NO ERROR.

NO. 93CRS348, ROBBERY WITH A DANGEROUS WEAPON: NO ERROR.

NO. 93CRS349, FIRST DEGREE KIDNAPPING: NO ERROR.