STATE OF NORTH CAROLINA v. ERIC LAWRENCE CALL

No. 341A96-2

(Filed 4 May 2001)

### 1. Jury— selection—capital sentencing—stake-out question

The trial court did not err during jury selection in a capital sentencing proceeding by sustaining the prosecutor's objection to defendant's question about whether a juror could maintain the courage of her convictions if she did not think that the State had proved its case and the other eleven jurors felt that it had. Counsel may not pose hypothetical questions designed to elicit in advance what a juror's decision will be under a given state of facts; moreover, the question also appeared to be an incorrect statement of the law in that jurors have a duty to deliberate with the other jurors with a view to reaching an agreement.

### 2. Sentencing— capital—mitigating circumstance—peremptory instruction—jury instructed in accord with request

There was no error in a capital sentencing proceeding where defendant contended that the court failed to peremptorily instruct the jury on a mitigating circumstance, but the court instructed the jury in accordance with defendant's request.

### 3. Sentencing— capital—mitigating circumstances—peremptory instructions

The trial court did not err in a capital sentencing proceeding by failing to peremptorily instruct the jury on the mitigating circumstances of impaired capacity to appreciate the criminality of the offense and the age of the defendant where defendant's evidence supporting these two circumstances was controverted.

### 4. Indigent Defendants— capital sentencing—right to two attorneys—only one permitted to object

The trial court did not err during a capital sentencing proceeding by permitting only one of defendant's attorneys to object during the prosecutor's direct examination of a witness. Defendant had two court-appointed attorneys as required by N.C.G.S. § 7A-450(b1) and the court's ruling did not prevent them from communicating, prompting, or consulting one another or so drastically circumscribe the second attorney's role as to render the appointment of two attorneys meaningless.

**5. Constitutional Law— capital sentencing—right to two attorneys—no constitutional requirement**

There was no constitutional error in a capital sentencing proceeding where the trial court permitted only one defense attorney to object during the prosecutor's direct examination of a witness. Defendant did not raise the issue at trial and so did not preserve it for review; even if he had, the right to the appointment of additional attorneys in a capital trial is statutory rather than constitutional.

**6. Sentencing— capital—continuance—not requested**

The trial court did not fail to exercise its discretion in declining to continue a capital sentencing proceeding where defendant challenged the admissibility of prior recorded testimony of a witness then in Mexico and there was a discussion by the prosecutor of recessing the hearing until the witness could return, but defendant never made a motion for a continuance or objected to the trial court's negative response to the prosecutor's suggestion.

**7. Criminal Law— prosecutor's argument—decision without prejudice or sympathy**

The trial court did not err by not intervening ex mero motu in the prosecutor's argument in a capital sentencing proceeding where defendant contended on appeal that the prosecutor falsely represented to the jurors that they had promised to decide defendant's case without sympathy, but the court had told the jurors that they must be as free from bias, prejudice, or sympathy as humanly possible and the prosecutor properly argued that the jury should follow the law and render a verdict without prejudice or sympathy for either side.

**8. Criminal Law— prosecutor's argument—jurors answering to higher power**

The trial court did not err by not intervening ex mero motu in a capital sentencing proceeding where the prosecutor argued that the jurors would have to answer to someone higher than the court if they failed to follow the law and decided the case without sympathy or prejudice. The prosecutor did not contend that the State's law enforcement powers were ordained by God.

**9. Sentencing— capital—prosecutor's argument—aggravating circumstances—course of conduct**

The trial court did not err by not intervening ex mero motu in a capital sentencing proceeding where defendant contended on appeal that the prosecutor improperly argued that defendant had been convicted of assaulting the victim's nephew and that the jury may have accepted without question the State's evidence regarding the assault when it found the course of conduct aggravating circumstance, but, in context, the prosecutor informed the jury only that defendant had been convicted of first-degree murder, first-degree kidnapping, and armed robbery, and did not inform the jury that defendant had been convicted of assaulting the nephew.

**10. Sentencing— capital—defendant's argument—aggravating circumstance—course of conduct—assault on victim's nephew**

There was no prejudice in a capital sentencing proceeding where defendant argued that the court violated his constitutional rights by sustaining the prosecutor's objection to defendant's attempt to inform the jury that defendant's related conviction for assaulting the victim's nephew had been vacated, but defendant did not object at trial, and, assuming that the court abused its discretion by improperly limiting the scope of defendant's argument, there was no prejudice because the court specifically instructed the jurors that they could find the course of conduct aggravating circumstance only if defendant engaged in conduct which involved another crime of violence, and the court permitted defense counsel to inform the jury that defendant had never been convicted of an assault on the nephew.

**11. Sentencing— capital—prosecutor's argument—number of aggravating circumstances**

The trial court did not err by failing to intervene ex mero motu in a capital sentencing proceeding where defendant contended that the prosecutor improperly argued that the jury should sentence defendant to death based solely upon the number of aggravating circumstances, but, in context, the prosecutor properly argued that the four aggravating circumstances outweighed (rather than outnumbered) the mitigating circumstances.

**12. Sentencing— capital—prosecutor's argument—existence of aggravating circumstances**

The trial court did not err by failing to intervene ex mero motu in a capital sentencing proceeding where defendant contended that the prosecutor argued that the aggravating circumstances had already been determined to exist, but, in context, the argument informed the jurors that they would have to determine beyond a reasonable doubt whether any of the aggravating circumstances existed.

**13. Sentencing— capital—aggravating circumstance—especially heinous, atrocious, or cruel murder—not overbroad**

The aggravating circumstance that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9), is not unconstitutionally vague and overbroad.

**14. Sentencing— capital—aggravating circumstance—especially heinous, atrocious or cruel murder—evidence sufficient**

The evidence in a capital sentencing proceeding was sufficient to support submission of the aggravating circumstance that the murder was especially heinous, atrocious, or cruel where defendant lured the victim to a rural location where he knew they would be alone, he beat the victim to death with a shovel and tire iron without provocation, inflicting several blunt-force injuries to the victim's head, causing the victim's skin to split and leaving jagged fractures underneath the victim's forehead, beneath his left eye, across the bridge of his nose, and above his ear, the force of the blows caused the shovel handle to break in half, the victim's hands were tied behind his back and his right foot was tied up to the shoulder area, and defendant later said that he needed to return to the cornfield to see if the victim was alive, indicating defendant's personal belief that the victim might have lived through the beating.

**15. Appeal and Error— preservation of issues—capital resentencing—expert testimony—failure to object**

Defendant did not object and did not preserve for review the question of whether the trial court erred in a capital resentencing proceeding by allowing an expert forensic pathologist to give opinion testimony where he described the nature of the victim's injuries even though he had not performed the autopsy.

**16. Evidence— capital sentencing—leading questions—no prejudice**

There was no error in a capital sentencing proceeding where defendant contended that the court erred by overruling his objection to the prosecutor's improper cross-examination of a pathologist by leading questions, but the precise nature of defendant's first objection is not clear, the prosecutor restated the question and the court sustained defendant's second objection, defendant waived his right to raise the objection on appeal by asking a similar question, and there was no prejudice because the challenged examination occurred outside the presence of the jury and defendant did not object to the pathologist's testimony before the jury.

**17. Indictment and Information— facially invalid indictment—challenged at any time**

While as a general rule a defendant waives an attack on an indictment when the indictment is not challenged at trial, an indictment alleged to be facially invalid may be challenged at any time notwithstanding failure to contest its validity at trial because it would deprive the trial court of jurisdiction.

**18. Homicide— short-form murder indictment—constitutional**

A short-form indictment for first-degree murder was valid under *Jones v. United States*, 526 U.S. 227.

**19. Sentencing— capital—death sentence proportionate**

A death sentence was proportionate where the record supported the aggravating circumstances found by the jury; there was no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and the case was more similar to cases in which the death sentence was found proportionate than to those in which it was found disproportionate. Defendant was convicted based in part on premeditation and deliberation, the jury found four aggravating circumstances which have not been found in any of the cases held disproportionate, and three of the aggravating circumstances found here are among those which have been held sufficient to support a sentence of death standing alone.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a 21 May 1999 judgment imposing a sentence of death entered by Doughton, J., at a resentencing proceeding held in Superior Court,

Wilkes County, upon defendant's conviction of first-degree murder. Heard in the Supreme Court 18 October 2000.

*Michael F. Easley, Attorney General, by Gail E. Weis, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant.*

WAINWRIGHT, Justice.

On 9 October 1995, defendant was indicted for the first-degree murder of Macedonio Hernandez Gervacio (the victim). On 18 March 1996, defendant was indicted for robbery with a dangerous weapon, first-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was tried capitally before a jury at the 15 July 1996 Criminal Session of Superior Court, Ashe County. The jury found defendant guilty of all charges, specifically finding defendant guilty of first-degree murder both on the basis of premeditation and deliberation and under the felony murder rule. Following a capital sentencing proceeding, the jury recommended a sentence of death for the first-degree murder, and the trial court entered judgment in accordance with that recommendation. The trial court also sentenced defendant to a concurrent sentence of sixty-three to eighty-five months' imprisonment for the kidnapping conviction and to consecutive sentences of fifty-five to seventy-five months' imprisonment for the robbery conviction and twenty-five to thirty-nine months' imprisonment for the assault conviction.

On appeal, this Court found no error in the guilt phase of defendant's trial with regard to his convictions for first-degree murder, first-degree kidnapping, and robbery with a dangerous weapon. *State v. Call,* 349 N.C. 382, 508 S.E.2d 496 (1998). However, we arrested judgment as to defendant's conviction for assault with a deadly weapon with intent to kill inflicting serious injury based on a fatal variance in the indictment. *Id.* at 424, 508 S.E.2d at 522. We also vacated defendant's sentence of death and remanded for resentencing because, during the capital sentencing proceeding, the prosecution was allowed to impeach defendant with evidence of his post-*Miranda* silence. *Id.* at 425-26, 508 S.E.2d at 523.

On 23 April 1999, the trial court entered an order transferring venue from Ashe County, North Carolina, to Wilkes County, North

Carolina. Defendant's new capital sentencing proceeding was held at the 17 May 1999 Special Criminal Session of Superior Court, Wilkes County. On 21 May 1999, the jury once again recommended a sentence of death, and the trial court entered judgment in accordance with that recommendation. Defendant appeals his sentence of death to this Court.

The State's evidence at defendant's capital sentencing proceeding tended to show as follows: At around 9:30 p.m. on 24 August 1995, defendant visited the victim and offered him twenty-five dollars to help him move some things. The victim told his nephew, Gabriel Gonzalez (Gabriel), that he would "be right back," then departed the trailer with defendant.

At approximately 11:00 p.m., Gabriel heard a knock on the door and assumed that the victim had returned. When he opened the door, however, he saw that defendant had returned alone. Defendant offered Gabriel twenty dollars to help him move a refrigerator. Gabriel accepted defendant's offer and departed with defendant in defendant's pickup truck. Defendant took Gabriel to a cornfield several miles away and parked his pickup truck. Thereafter, defendant lured Gabriel outside of the vehicle by telling him the pickup truck was stuck. As Gabriel pushed the bumper of the pickup, defendant picked up an aluminum bat and, after pretending to use the bat to lift the tire, struck Gabriel on the head. Gabriel recovered, stood up, and ran to the edge of a nearby river. Defendant ran after him briefly, then returned to the pickup truck and departed the area. Gabriel then ran into the cornfield and lay on the ground all night.

The next morning, Gabriel swam across the river and sought assistance at area homes. Eventually, Gabriel received a ride home. At approximately 7:00 p.m. on 25 August 1995, Gabriel, through an interpreter, told the trailer park owner, David Shatley, what had happened the previous night. Thereafter, law enforcement officers were contacted, and Gabriel led a search team back to the cornfield to search for the victim. When the search party arrived at the cornfield, Gabriel excitedly told the same interpreter that defendant had brought him to that location and assaulted him. After walking six to eight rows into the cornfield, law enforcement officers found a baseball cap on the ground and noticed several broken corn stalks. As they continued their search, the officers noticed a plaid shirt near the edge of the cornfield. After walking toward the shirt, the officers discovered that the shirt was on the victim's body. The victim's body was partially covered by corn stalks. The officers noted that the victim

had suffered severe head injuries. The victim's right foot was tied up to his shoulder area with a yellow rope, and the victim's hands were tied behind his back with a white rope. Shatley identified the victim's body, and Gabriel identified the baseball cap as the one the victim was wearing when he left the trailer with defendant. The officers also discovered a broken stick, similar to a shovel handle, at the scene.

After the victim's body was found, the authorities immediately began to search for defendant. Defendant was not found at his residence. However, based on information obtained at defendant's residence, a warrant was issued for his arrest. Defendant was arrested on 27 August 1995 in a motel room in Monroe, North Carolina. Defendant and his pickup truck were brought back to Ashe County, where officers inventoried the contents of defendant's pickup truck. Among items inventoried, officers found a bag of clothes and a steel rod that appeared to have blood and hair embedded in it. In addition, officers recovered a motel registration form in the name of "Rick N. Finley." A handwriting expert later determined that the registration form was written by defendant.

On 28 August 1995, Alan Varden, defendant's friend and associate, gave a statement to Steve Cabe, a special agent with the North Carolina State Bureau of Investigation. According to Varden, defendant repeatedly suggested robbing the victim in the weeks leading up to the murder and tried to obtain Varden's assistance. Defendant told Varden that the victim carried a large amount of cash that he was saving to purchase an automobile. On one occasion, defendant showed Varden a shovel handle that was in defendant's pickup truck and stated that he would like to use it to "whack" the victim in the head. On another occasion, defendant took Varden out to the cornfield where the victim's body was later found and told Varden that the cornfield, because it was desolate, would be a good place to rob the victim and dispose of the body. Defendant also offered to share the victim's money with Varden if he would help defendant take care of Gabriel because Gabriel was much bigger than defendant. Varden refused to help defendant.

At approximately 8:00 p.m. on the day of the murder, defendant told Varden he was going to help Shatley move some furniture out of a trailer and asked Varden to help. Varden refused to go but did give defendant a piece of yellow plastic rope to help tie the furniture down. At approximately 10:30 p.m., defendant returned home, where Varden and defendant's wife, Virginia Call (Jennie), were playing

Nintendo. Defendant asked Varden to help him move a dresser, and Varden and defendant departed, each in his own pickup truck. On the way to Varden's trailer, defendant and Varden stopped at a church and used the rest room. While at the church, defendant handed Varden a one hundred dollar bill, stating that it was for the camper shell he had obtained from Varden. After leaving the church, defendant and Varden stopped at a service station, and defendant gave Varden a ten dollar bill and another one hundred dollar bill.

Upon arriving at Varden's trailer, defendant told Varden that he had hit the victim over the head, had broken a shovel handle, and had hit the victim with a tire iron. Defendant also described how he had tied the victim's right leg and hands behind the victim's back. Defendant told Varden he needed to go back and check the victim's pulse and that he also needed to get Gabriel. Once again, defendant sought Varden's assistance, stating that Varden's pickup truck had a quieter muffler. After Varden declined to help defendant, defendant put Varden's baseball bat in his pickup truck and departed in the direction of the victim's trailer. Varden returned to defendant's trailer.

Approximately thirty minutes later, defendant sped down his driveway and ran into his trailer, repeatedly telling Varden and Jennie that he had "f---ed up." Defendant told Varden that he had hit Gabriel with the bat but that Gabriel had gotten away. Defendant then gathered some clothes and said he was "leaving the country." Defendant, Varden, and Jennie went to Varden's trailer, where defendant showered and shaved off his mustache. Defendant also returned Varden's baseball bat to him. Varden went to defendant's trailer to get defendant's wallet and pants, as well as shoes for Jennie. When Varden returned to his trailer, defendant told him he had written a note and left it on Varden's coffee table. The note, which was recovered during the investigation, read as follows: "I Eric Call hereby declare that my wife Virginia Cox Call had absolutely no knowledge of what might have taken place. Signed Eric L. Call."

Sometime after midnight, defendant departed in his pickup truck, and Jennie and Varden followed defendant in Varden's pickup truck. After traveling some distance, defendant stopped and said goodbye to Jennie, then departed the area. Varden and Jennie returned home.

Prior to testifying at defendant's capital sentencing proceeding, forensic pathologist Dr. Thomas A. Sporn reviewed the autopsy

report prepared by Dr. Robert Thompson, as well as the autopsy photographs and a transcript of Dr. Thompson's prior testimony. Dr. Sporn testified that the victim's body showed a pattern of blunt-force injuries to the head and facial area that could have been caused by a baseball bat, a shovel handle, or a tire iron. Dr. Sporn noted the splitting of the victim's skin and fracturing of the victim's skull at the forehead and beneath the left eye, as well as splitting and tearing of the skin and fracturing of the skull above the victim's ear. Dr. Sporn also opined that the victim's injuries were caused by "clearly several, more than two," blows. Dr. Sporn's opinion with regard to the number of blows the victim received was based, in part, on Dr. Thompson's assessment that the victim had suffered at least eleven blows to the head.

**[1]** In his first assignment of error, defendant contends the trial court erred by sustaining the prosecutor's objection to a question posed by defendant during jury selection. We disagree.

"The primary goal of the jury selection process is to ensure selection of a jury comprised only of persons who will render a fair and impartial verdict." *State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 731 (1992), *quoted in State v. Larry*, 345 N.C. 497, 509, 481 S.E.2d 907, 914, *cert. denied*, 522 U.S. 917, 139 L. Ed. 2d 234 (1997). " 'Regulation of the manner and the extent of inquiries on *voir dire* rests largely in the trial court's discretion.' " *State v. Elliott*, 344 N.C. 242, 261, 475 S.E.2d 202, 209 (1996) (quoting *State v. Green*, 336 N.C. 142, 164, 443 S.E.2d 14, 27, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994)), *cert. denied*, 520 U.S. 1106, 137 L. Ed. 2d 312 (1997). "In order for the defendant to show reversible error, he must show that the trial court abused its discretion and that he was prejudiced thereby." *State v. Jones*, 339 N.C. 114, 134, 451 S.E.2d 826, 835 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995).

In the present case, the trial court sustained the prosecutor's objection to the form of the following question posed by defense counsel:

Ms. Mathis, I'm just going to pick on you for one second. If, if you personally do not think the State has proved something beyond a reasonable doubt and the other eleven have [sic], could you maintain the courage of your convictions and say "They've not proved that"?

This Court has held that " '[c]ounsel may not pose hypothetical questions designed to elicit in advance what the juror's decision will

be under a certain state of the evidence or upon a given state of facts.' " *Elliott*, 344 N.C. at 262, 475 S.E.2d at 209 (quoting *State v. Vinson*, 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *death sentence vacated*, 428 U.S. 902, 49 L. Ed. 2d 1206 (1976)). " '[S]uch questions tend to "stake out" the juror and cause him to pledge himself to a future course of action.' " *State v. Richmond*, 347 N.C. 412, 425, 495 S.E.2d 677, 683 (quoting *Vinson*, 287 N.C. at 336, 215 S.E.2d at 68), *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88 (1998). Moreover, we have held that "[a] question which is designed to determine how well a prospective juror would stand up to other jurors in the event of a split decision amounts to an impermissible 'stake out.' " *Elliott*, 344 N.C. at 262, 475 S.E.2d at 209; *accord State v. Bracey*, 303 N.C. 112, 118-19, 277 S.E.2d 390, 395 (1981).

As in *Elliott*, the question excluded by the trial court in the present case was improper as it "seems to be designed to determine how well prospective jurors would stand up to other jurors in the event of a split decision." 344 N.C. at 262, 475 S.E.2d at 209. The challenged question also appears to be an " 'incorrect or inadequate statement[] of the law.' " *Id.* (quoting *Vinson*, 287 N.C. at 336, 215 S.E.2d at 68). Although jurors are required to make individual decisions about a case, "each juror also has a duty to deliberate with other jurors with a view to reaching an agreement." *Id.*; *see also* N.C.G.S. § 15A-1235(b) (1999). Here, the question excluded by the trial court "may have had the tendency to suggest that jurors should make decisions without considering the opinions of other jurors." *Elliott*, 344 N.C. at 262-63, 475 S.E.2d at 209. For these reasons, the trial court did not abuse its discretion by sustaining the prosecutor's objection to the form of defendant's question. Moreover, assuming error *arguendo*, defendant has failed to demonstrate that he was prejudiced by the trial court's ruling. *See Jones*, 339 N.C. at 134, 451 S.E.2d at 835. This assignment of error is overruled.

By assignment of error, defendant contends the trial court erred in refusing to peremptorily instruct the jury on the following three statutory mitigating circumstances: (1) the murder was committed while the defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2) (1999); (2) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, N.C.G.S. § 15A-2000(f)(6); and (3) the age of the defendant at the time of the crime, N.C.G.S. § 15A-2000(f)(7). None of the jurors found any of these requested statutory mitigating circumstances to exist.

"A defendant is entitled, upon request, to a peremptory instruction on a statutory mitigating circumstance when the evidence supporting the circumstance is uncontroverted." *State v. Roseboro*, 351 N.C. 536, 547, 528 S.E.2d 1, 8, *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 498 (2000); *accord State v. White*, 349 N.C. 535, 568, 508 S.E.2d 253, 274 (1998), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). However, " '[i]f the evidence supporting the circumstance is controverted or is not manifestly credible, the trial court should not give the peremptory instruction.' " *State v. Hedgepeth*, 350 N.C. 776, 787, 517 S.E.2d 605, 612 (1999) (quoting *State v. Bishop*, 343 N.C. 518, 557, 472 S.E.2d 842, 863 (1996), *cert. denied*, 519 U.S. 1097, 136 L. Ed. 2d 723 (1997)), *cert. denied*, 529 U.S. 1006, 146 L. Ed. 2d 223 (2000).

[2] At the outset, we note defendant's assertion that the trial court failed to peremptorily instruct the jury on the (f)(2) mitigating circumstance is not supported by the record. To the contrary, the record reveals the trial court informed the prosecution and defense counsel that it would instruct the jury peremptorily on the (f)(2) mitigating circumstance. During its charge to the jury, the trial court did in fact instruct the jury in accordance with defendant's request. Therefore, defendant's argument regarding the (f)(2) mitigating circumstance is rejected.

[3] With regard to the trial court's refusal to peremptorily instruct the jury on the (f)(6) and (f)(7) mitigating circumstances, the record reveals defendant's evidence supporting these circumstances was in fact controverted. Dr. Ron Hood, a psychologist, evaluated defendant one month before the sentencing proceeding. During the sentencing proceeding, Dr. Hood testified that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired on the date of the murder due to personality and substance-abuse disorders. Dr. Hood also testified that defendant's IQ was "within a normal range." On cross-examination, Dr. Hood testified there was no evidence that defendant suffered from organic brain damage or mental retardation. Regarding defendant's substance-abuse impairment, Dr. Hood testified that he relied solely on defendant's statements to him about marijuana usage and that he had no independent medical evidence. In addition, Dr. Hood stated that he did not question defendant about his drug usage on the day of the murder.

The State's evidence tended to show that defendant carefully planned to kidnap, rob, and murder the victim, and that defendant

carried out his plan in a calm and calculated manner. Defendant discussed his plan on several occasions with his friend, Varden, and repeatedly tried to obtain Varden's assistance. On one occasion, defendant showed Varden a shovel handle and stated that he would like to use it to "whack" the victim in the head. On another occasion, defendant took Varden to the cornfield where the victim's body was ultimately found and told Varden that the cornfield would be a good place to rob the victim and dispose of the body. On the night of the murder, defendant left the victim's body in the cornfield, then returned home and described to Varden how he had beaten and tied up the victim. He then explained to Varden that he needed to get Gabriel because defendant knew that Gabriel would be a witness to the fact that the victim had left home with defendant earlier that night.

The record therefore reveals conflicting evidence regarding whether defendant's ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. " '[A] peremptory instruction is inappropriate when the evidence surrounding that issue is conflicting.' " *Roseboro*, 351 N.C. at 548, 528 S.E.2d at 9 (quoting *State v. Noland*, 312 N.C. 1, 20, 320 S.E.2d 642, 654 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985)) (alteration in original). Thus, the trial court did not err by denying defendant's motion for a peremptory instruction on the (f)(6) mitigating circumstance.

We likewise reject defendant's argument that the trial court erred by refusing to peremptorily instruct the jury on the statutory mitigating circumstance of the age of defendant at the time of the crime. N.C.G.S. § 15A-2000(f)(7). This Court has characterized "age" as a "flexible and relative concept." *State v. Johnson*, 317 N.C. 343, 393, 346 S.E.2d 596, 624 (1986); *accord State v. Spruill*, 338 N.C. 612, 660, 452 S.E.2d 279, 305 (1994), *cert. denied*, 516 U.S. 834, 133 L. Ed. 2d 63 (1995). We have also held that chronological age is not the determinative factor with regard to submission of the (f)(7) mitigating circumstance. *State v. Peterson*, 350 N.C. 518, 528, 516 S.E.2d 131, 138 (1999), *cert. denied*, 528 U.S. 1164, 145 L. Ed. 2d 1087 (2000). Rather, the trial court must consider other varying conditions and circumstances. *Id.*

In the present case, defendant was twenty-six when he murdered the victim. During his capital sentencing proceeding, however, Dr. Hood testified that, based on his psychological evaluation, defendant's emotional age "could have been around the eighteen to

nineteen year old range" at the time of the murder. Although evidence demonstrating emotional immaturity is relevant, such evidence "is not viewed in isolation, particularly where other evidence shows 'more mature qualities and characteristics.'" *Spruill*, 338 N.C. at 660, 452 S.E.2d at 305 (quoting *Johnson*, 317 N.C. at 393, 346 S.E.2d at 624).

The evidence presented in this case showed that defendant's IQ is within the normal range, that he had significant work experience, that defendant was a good employee and a good mechanic, that defendant completed his GED, and that defendant had attended Anson Tech to become a mechanic and had received good grades. The foregoing evidence controverted Dr. Hood's testimony regarding defendant's emotional age or immaturity. Therefore, the trial court did not err by denying defendant's request for a peremptory instruction on the (f)(7) mitigating circumstance. This assignment of error is overruled.

**[4]** By assignment of error, defendant contends the trial court erred by permitting only one of his attorneys to object during the prosecutor's direct examination of a witness. As the prosecutor questioned Shatley, both defense attorneys objected at different times. After the second attorney objected to a question directed to the same witness, the trial court overruled the objection, then stated, "whoever is going to do each witness, one at a time. You understand?" Shortly thereafter, the jury was released for lunch break, and the following exchange occurred out of the presence of the jury:

THE COURT: I only ask whoever is going to do the examination of each witness that one of you do it at a time.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: It's hard for me to keep up with everything.

Defendant argues that the trial court's ruling in this regard impermissibly infringed on his statutory right to the assistance of two attorneys in a capital trial and his constitutional right to the assistance of counsel. We disagree.

The governing statute provides in pertinent part:

An indigent person indicted for murder may not be tried where the State is seeking the death penalty without an assistant counsel being appointed in a timely manner. If the indigent person is represented by the public defender's office, the requirement of an

assistant counsel may be satisfied by the assignment to the case of an additional attorney from the public defender's staff.

N.C.G.S. § 7A-450(b1) (1999).

In *State v. Frye*, 341 N.C. 470, 461 S.E.2d 664 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996), this Court held that the trial court did not violate the defendant's statutory right to two attorneys by not allowing both attorneys to object during *voir dire*. We reasoned that because the trial court "did not deny defendant the assistance of a second attorney or so drastically circumscribe the second attorney's role as to render the appointment of two attorneys meaningless," section 7A-450(b1) was not violated. *Id.* at 493, 461 S.E.2d at 675.

In the present case, as in *Frye*, we conclude the trial court's ruling did not violate defendant's statutory entitlement to two attorneys. Here, defendant had two court-appointed attorneys as required by section 7A-450(b1). The trial court ruled merely that only one of defendant's attorneys could make objections during the testimony of each witness. The trial court's ruling did not "prohibit[] or prevent[] defendant's attorneys from communicating, prompting, or consulting one another." *State v. Fullwood*, 343 N.C. 725, 733, 472 S.E.2d 883, 887 (1996), *cert. denied*, 520 U.S. 1122, 137 L. Ed. 2d 339 (1997); *see also Frye*, 341 N.C. at 493, 461 S.E.2d at 675. In short, the trial court "did not deny defendant the assistance of a second attorney or so drastically circumscribe the second attorney's role as to render the appointment of two attorneys meaningless." *Frye*, 341 N.C. at 493, 461 S.E.2d at 675. Therefore, defendant's argument is without merit.

[5] Defendant also contends the trial court's ruling in this regard violated his right to the assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution. Because defendant did not raise this constitutional issue at trial, he has failed to preserve it for our review. *State v. Gibbs*, 335 N.C. 1, 42, 436 S.E.2d 321, 344 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). Even if defendant had properly preserved this constitutional issue for appeal, his argument would fail because " '[a]n indigent defendant's right to the appointment of *additional* counsel in capital cases is statutory, not constitutional.' " *Frye*, 341 N.C. at 493, 461 S.E.2d at 675 (quoting *State v. Locklear*, 322 N.C. 349, 357, 368 S.E.2d 377,

382 (1988)) (alteration in original). Accordingly, this assignment of error is overruled.

[6] By assignment of error, defendant contends the trial court committed reversible error by failing to exercise its discretion when it declined to continue defendant's capital sentencing proceeding. We disagree.

This Court has held that "[w]hen a motion addressed to the discretion of the trial court is denied upon the ground that the trial court has no power to grant the motion in its discretion, the ruling is reviewable." *State v. Johnson*, 346 N.C. 119, 124, 484 S.E.2d 372, 375 (1997). A motion for a continuance is ordinarily addressed to the sound discretion of the trial court, and the ruling will not be disturbed absent a showing of abuse of discretion. *State v. Beck*, 346 N.C. 750, 756, 487 S.E.2d 751, 755 (1997); *State v. Poole*, 305 N.C. 308, 318, 289 S.E.2d 335, 341 (1982). When a motion to continue raises a constitutional issue, however, the trial court's ruling thereon involves a question of law that is fully reviewable on appeal by examination of the particular circumstances presented in the record. *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982); *State v. Jones*, 342 N.C. 523, 530-31, 467 S.E.2d 12, 17 (1996). Even when the motion raises a constitutional issue, denial of the motion is grounds for a new trial only upon a showing that "the denial was erroneous and also that [defendant's] case was prejudiced as a result of the error." *Branch*, 306 N.C. at 104, 291 S.E.2d at 656.

In the present case, we need not address whether the trial court failed to exercise its discretion because the record reveals that defendant never made a motion for a continuance. Prior to the prosecution's presentation of evidence at trial, defendant made a motion for recordation of any testimony given in a foreign language. In response, the prosecutor informed the trial court that there would be no Spanish-speaking witnesses. The prosecutor explained that Gabriel had failed to obtain his temporary visa and board the airplane out of Mexico. The prosecutor also told the trial court that he intended to read Gabriel's prior recorded testimony into the record and provided the trial court with a copy of the transcript. Defendant did not make a motion for a continuance at that time. After the prosecutor presented the testimony of two witnesses, he announced his intention to read Gabriel's prior recorded testimony into evidence. Although defense counsel challenged the admissibility of the prior recorded testimony, the record reveals that defense counsel did not

seek a continuance. After defense counsel concluded their argument against the admission of the prior recorded testimony, the trial court asked the prosecutor if he wanted to respond. The prosecutor responded as follows:

> [PROSECUTOR]: Well, Yes, Your Honor. I mean, it sounds like Mr. Wiley really wants the, Mr. Hernandez (sic) . . . Gonzalez here, and the State's done everything we could to get him here. We'd like to have the victim's father here to tell the jury about his loss, so maybe a proper, a proper solution would be to recess this hearing until June 1st criminal term of court and that [sic] we can have everybody here and let the jury hear all about the actual events. But, we've made a very good faith attempt to get them here. But, if you feel like it's prejudicing their client in some way, we'd be happy to recess this matter, if the Court pleases, until June 1st criminal session of court and pick it back up then where we can have them here.

Defendant did not request a continuance at that time. Thereafter, the following exchange occurred:

> THE COURT: We have a jury sitting in that jury room right back there. It's not going to [be] possible to recess this case until June 1st.

> [PROSECUTOR]: All right.

> [DEFENSE COUNSEL]: *Nothing further.*

(Emphasis added.)

The record therefore demonstrates that defendant neither requested a continuance nor objected to the trial court's response to the prosecutor's suggested course of action. Thus, the trial court was never called upon by defendant to exercise its discretion, and defendant has failed to preserve this issue for appellate review. *See* N.C. R. App. P. 10(b)(1); *State v. Smith*, 352 N.C. 531, 557-58, 532 S.E.2d 773, 790 (2000), *cert. denied*, ⎯ U.S. ⎯, ⎯ L. Ed. 2d ⎯, 69 U.S.L.W. 3629 (2001). Accordingly, this assignment of error is rejected.

By assignments of error, defendant contends the trial court erred by failing to intervene *ex mero motu* to prevent improper argument by the prosecutor during closing arguments. We disagree.

When, as here, a defendant fails to object during closing argument, the standard of review is whether the argument was so grossly

improper that the trial court erred in failing to intervene *ex mero motu. State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999); *State v. Sexton*, 336 N.C. 321, 348-49, 444 S.E.2d 879, 895, *cert. denied*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994). " '[O]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken.' " *State v. Davis*, 353 N.C. 1, 31, 539 S.E.2d 243, 263 (2000) (quoting *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996)).

We have recognized that " '[t]rial counsel is allowed wide latitude in argument to the jury and may argue all of the evidence which has been presented as well as reasonable inferences which arise therefrom.' " *State v. Hyde*, 352 N.C. 37, 56, 530 S.E.2d 281, 294 (2000) (quoting *State v. Guevara*, 349 N.C. 243, 257, 506 S.E.2d 711, 721 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999)), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 775 (2001). Moreover, "the prosecutor in a capital case has a duty to strenuously pursue the goal of persuading the jury that the facts of the particular case at hand warrant imposition of the death penalty." *Green*, 336 N.C. at 188, 443 S.E.2d at 41. The trial court's exercise of discretion over the latitude of counsel's argument will not be disturbed absent any gross impropriety in the argument that would likely influence the jury's verdict. *State v. McNeil*, 350 N.C. 657, 685, 518 S.E.2d 486, 503 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 321 (2000). We also emphasize that " 'statements contained in closing arguments to the jury are not to be placed in isolation or taken out of context on appeal. Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred.' " *Guevara*, 349 N.C. at 257, 506 S.E.2d at 721 (quoting *Green*, 336 N.C. at 188, 443 S.E.2d at 41).

**[7]** Defendant first argues the prosecutor falsely represented to the jurors that they had promised him they would decide defendant's case without sympathy. The prosecutor argued, in context, as follows:

> One more thing I want to point out. Don't forget your duty as a juror in this case. Your duty is, ladies and gentlemen of the jury, to set a punishment. We're here to punish [defendant] for the

crimes he's committed. We're not here to reward anybody. We're not here to avenge anybody's debt. We're here to select a proper punishment, and there's only two options, and you all know that.

But, don't forget, ladies and gentlemen, because there's a lot of emotion came up in this trial. There was a lot of emotion. And, you could let that emotion override your duty as a juror, because your duty is to apply the facts that you heard in this case to the law that the Judge is going to give you. And, if the facts fit the law and show that you ought to recommend the death penalty, you cannot let your emotions override your duty.

Yes, it's hard. There's nothing easy about this case for anybody involved. There's nothing easy in anybody's case when it comes down to saying whether a man ought to live or die. Nobody said it was easy. *But, you have to go by the law. Not only that, you gave your oath to this Court that you would hear this case fairly, impartially, you would follow the law even if you disregarded it, and you would decide this case, this verdict without sympathy and without prejudice for anyone.*

· *And, if you didn't do that, and if you don't do that, there's nothing we can do about it. But, one day you'll have to answer to somebody higher than this court.*

(Emphasis added.)

Contrary to defendant's contention, the above-emphasized argument reveals that the prosecutor did not claim that the jurors had promised him they would decide defendant's case without sympathy. Rather, the prosecutor stated that the jurors had promised to decide the case without sympathy in their oath to the trial court. The record reveals that the trial court required the jurors to give an oath to decide the case based on the evidence presented, and without prejudice or partiality. In addition, the trial court told the jurors that they "must be as free as humanly possible from bias, prejudice, or sympathy, and must not be influenced by preconceived ideas either as to the facts or as to the law."

Viewed in context, the prosecutor properly argued to the jurors that they should follow the law and render a verdict without prejudice or sympathy for either side. The prosecutor did not, as defendant suggests, argue that the jurors should reject all mitigating circumstances. Moreover, the trial court properly instructed the jury how mitigating circumstances should be considered. The trial court

also instructed the jury on the catchall mitigating circumstance, which permits jurors to consider anything in mitigation. *See State v. Conner*, 345 N.C. 319, 332-33, 480 S.E.2d 626, 632, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997). Finally, we have held that prosecutors "may properly argue to the sentencing jury that its decision should be based not on sympathy, mercy, or whether it wants to kill the defendant, but on the law." *Frye*, 341 N.C. at 506, 461 S.E.2d at 683; *accord State v. Rouse*, 339 N.C. 59, 93, 451 S.E.2d 543, 561-62 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995). Accordingly, the trial court did not err in failing to intervene *ex mero motu*.

[8] Defendant next argues the trial court should have intervened *ex mero motu* when, as noted above, the prosecutor argued that the jurors "would have to answer to somebody higher than this court" if they failed to follow the law and decide this case "without sympathy and without prejudice for anyone."

This Court has disapproved " 'arguments to the effect that the law enforcement powers of the State come from God and that to resist those powers is to resist God.' " *State v. Cummings*, 352 N.C. 600, 628, 536 S.E.2d 36, 56 (2000) (quoting *State v. Geddie*, 345 N.C. 73, 100, 478 S.E.2d 146, 160 (1996), *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1997)). We have also repeatedly cautioned counsel " 'that they should base their jury arguments solely upon the secular law and the facts.' " *Davis*, 353 N.C. at 28, 539 S.E.2d at 262 (quoting *State v. Williams*, 350 N.C. 1, 27, 510 S.E.2d 626, 643, *cert. denied*, 528 U.S. 880, 145 L. Ed. 2d 162 (1999)). As we have previously recognized, "[j]ury arguments based on any of the religions of the world inevitably pose a danger of distracting the jury from its sole and exclusive duty of applying secular law and unnecessarily risk reversal of otherwise error-free trials." *Williams*, 350 N.C. at 27, 510 S.E.2d at 643.

In the instant case, the prosecutor did not contend that the State's law enforcement powers were ordained by God. *See Geddie*, 345 N.C. at 100, 478 S.E.2d at 160. We also note that, as in *Williams*, the prosecutor in the present case told the jury that it should make its sentencing decision based on the law and the evidence presented in this case. *Williams*, 350 N.C. at 26-27, 510 S.E.2d at 643; *accord Davis*, 353 N.C. at 29, 539 S.E.2d at 262. Accordingly, the prosecutor's argument was not so grossly improper as to warrant *ex mero motu* intervention.

**[9]** Defendant next argues the prosecutor improperly argued that the jurors should accept without question that defendant assaulted Gabriel because defendant had been previously convicted of that offense. Defendant contends that, based on this improper argument, the jury may have accepted without question the State's evidence regarding defendant's assault of Gabriel when it found the (e)(11) aggravating circumstance, that "the murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons." N.C.G.S. § 15A-2000(e)(11). The prosecutor argued in context as follows:

> [T]his man who had no previous criminal history, this man who had a character of peacefulness and respect towards others, this man who had been a kind and considerate person[] to individuals with disabilities, beat the brains out of an innocent victim, and was convicted, ladies and gentlemen, of first degree murder, both on the basis of the felony murder rule and premeditation and deliberation.

> This man . . . who was a courteous, respectful and obedient student, this man who carried his cousin on his back for a mile and a half to get him help, was convicted, ladies and gentlemen of the jury, of tricking an innocent victim into a desolate area so that he could rob and kill him. He was convicted of first degree kidnapping.

> This[] man, ladies and gentlemen of the jury, who shows mechanical aptitude and work skills and a willingness to use these skills to benefit others, this man, who had a reputation for being industrious, hardworking, patient among his co-workers, this man who showed initiative by getting his GED and attending community college, instead of using those skills, took a man out to a desolate area where he could rob him. He took a man out there and then took money from either a dead person or a person that was dying, and he was convicted of armed robbery.

> Ladies and gentlemen of the jury, when you go back to your deliberations, you consider him to be guilty of these charges. You consider that he did everything that the State's evidence shows in the hearing in this case. And, don't forge[t] that if you don't remember anything else.

Now, that matter has been decided for you. And, it really doesn't matter what you think about the facts. It doesn't matter what Mr. and Mrs. Call think. It doesn't matter what [defense counsel] and myself think about the facts. Those facts have been decided. It's not for you to determine facts about August the 24th, of 1995.

. . . .

. . . Your duty is, ladies and gentlemen of the jury, to set a punishment.

After reviewing the challenged argument in context, we conclude the prosecutor's argument was not improper. Contrary to defendant's argument, the prosecutor never informed the jury that defendant had previously been convicted of assaulting Gabriel. Rather, the prosecutor informed the jury only that defendant had been previously convicted of first-degree murder, first-degree kidnapping, and armed robbery. Therefore, the trial court did not err by failing to intervene *ex mero motu*.

[10] We likewise reject defendant's related argument that the trial court violated his constitutional rights by sustaining the prosecutor's objection to defendant's attempt to inform the jury that defendant's conviction for assaulting Gabriel had been vacated by this Court. During defendant's closing argument, the following exchange occurred:

[DEFENSE COUNSEL]: . . . One other thing as to this last aggravating circumstance, that the State did not tell you is that, that charge, that the charge of conviction for assault against this individual. We never saw Gabriel Gonzalez. It was in fact vacated by . . . .

[PROSECUTOR LYLE]: . . . OBJECTION.

[PROSECUTOR GREEN]: . . . OBJECTION. I'd like to be heard.

At the outset, we note defendant made no constitutional argument at trial in this regard. Constitutional questions not raised and passed upon at trial will not be considered on appeal. *Gibbs*, 335 N.C. at 42, 436 S.E.2d at 344. Assuming, without deciding, that the trial court abused its discretion by improperly limiting the scope of defendant's argument, we nonetheless conclude that defendant suffered no prejudice. The trial court specifically instructed the jurors

that they could find the existence of the (e)(11) aggravating circumstance only if they found

> *from the evidence beyond a reasonable doubt* that in addition to killing the victim, Defendant . . . engaged [in] *conduct* which involved the commission of another crime of violence against another person . . . .

(Emphasis added).

Moreover, the record reveals that after sustaining the prosecutor's objection to defendant's proposed argument, the trial court permitted defense counsel to inform the jury that "[defendant] has never been convicted of an assault on Gabriel Gonzales." Accordingly, this argument is rejected.

[11] Defendant next contends the prosecutor improperly argued that the jury should sentence defendant to death based solely upon the number of aggravating circumstances submitted to it. Defendant contends the prosecutor's argument negated the need for the jury to weigh the aggravating circumstances against the mitigating circumstances. The record reveals that after arguing the evidence supporting aggravating circumstances, the prosecutor argued as follows:

> Are all four of these, when you only need one to call for the death penalty, are four of them enough? Sure. Absolutely.
>
> Is it true what we heard about the Defendant's past? See, because that's what they call mitigating circumstances. That's what the lawyers are going to want you to consider as mitigating the crime down so as not to recommend the death penalty.
>
> Are they true, what we heard about his past? Sure. We don't contest anything about how he grew up and what the family said. That's all true.
>
> But, did that outweigh what he did on August the 24th of 1995? Do those mitigating circumstances about his life, which I told you that I was talking about here at first [sic]. Those are all mitigating factors. I read them right off the sheet you'll get. Do those outweigh these four? No.
>
> And, if they don't outweigh these four, you can't recommend life.

Read in context, the prosecutor did not suggest to the jury that it should make its sentencing decision "by means of mathematical cal-

culations." Rather, the prosecutor properly argued to the jury that the four aggravating circumstances outweighed, rather than outnumbered, the mitigating circumstances. Moreover, the record reveals that the trial court instructed the jurors as follows:

> In so doing, you're the sole judges of the weight to be given to any individual circumstance which you find[,] whether aggravating or mitigating. You should not merely add up the number of aggravating circumstances and mitigating circumstances. Rather, you must decide from all the evidence what value to give to each circumstance and then weigh the aggravating circumstances so valued against the mitigating circumstances so valued, and finally determine whether the mitigating circumstances are insufficient to outweigh the aggravating circumstances.

The trial court's instruction properly explained to the jury the manner in which it should consider the aggravating and mitigating circumstances. Accordingly, the trial court did not err in failing to intervene *ex mero motu*.

[12] Finally, defendant contends the prosecutor improperly argued that four of the five aggravating circumstances submitted to the jury had already been determined to exist. The prosecutor argued as follows:

> The law says, in North Carolina, that you have to do certain specific things in the course of a murder before you can even be subjected to the death penalty. And, there's only eleven of them.

> They're set out in the law books as to what you can do. If you didn't do any of those things in a murder case, then you can't get the death penalty.

> In this case, ladies and gentlemen of the jury, out of those eleven, the Judge is going to submit four to you. They're going to be on the first page of the sheet that you get that's called Issue I. What it says is: Do you unanimously find from the evidence beyond a reasonable doubt the existence of one or more of the following aggravating circumstances? That's what they're called.

At the outset, we note that, contrary to defendant's argument, only four aggravating circumstances were submitted to the jury. Moreover, we fail to see how the challenged argument could have left

jurors with the impression that the four submitted aggravating circumstances had already been determined to exist. When read in context, the prosecutor's argument informed the jurors that they would have to determine beyond a reasonable doubt whether any of the submitted aggravating circumstances existed. This argument is without merit.

These assignments of error are overruled.

[13] By assignments of error, defendant contends the trial court erred by submitting to the jury the aggravating circumstance that the victim's murder was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9). Defendant argues that the (e)(9) aggravating circumstance is unconstitutionally vague and overbroad and that, based on the evidence presented during the sentencing proceeding, its submission was error. We disagree.

With regard to defendant's first contention, we have repeatedly rejected the argument that the (e)(9) aggravating circumstance is unconstitutionally vague and overbroad, *State v. Fleming*, 350 N.C. 109, 119, 512 S.E.2d 720, 728, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999); *State v. Lee*, 335 N.C. 244, 285, 439 S.E.2d 547, 568-69, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994), and we decline defendant's invitation to reconsider our prior holdings.

[14] Further, "[i]n determining whether the evidence is sufficient to support the trial court's submission of the especially heinous, atrocious, or cruel aggravator, we must consider the evidence 'in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom.' " *State v. Flippen*, 349 N.C. 264, 270, 506 S.E.2d 702, 706 (1998) (quoting *State v. Lloyd*, 321 N.C. 301, 319, 364 S.E.2d 316, 328, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988)), *cert. denied*, 526 U.S. 1135, 143 L. Ed. 2d 1015 (1999). " '[C]ontradictions and discrepancies are for the jury to resolve; and all evidence admitted that is favorable to the State is to be considered.' " *McNeil*, 350 N.C. at 693, 518 S.E.2d at 508 (quoting *State v. Robinson*, 342 N.C. 74, 86, 463 S.E.2d 218, 225 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 793 (1996)) (alteration in original). Finally, determination of whether submission of the (e)(9) aggravating circumstance is warranted depends on the particular facts of each case. *State v. Brewington*, 352 N.C. 489, 525, 532 S.E.2d 496, 517 (2000), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 992 (2001); *McNeil*, 350 N.C. at 693-94, 518 S.E.2d at 508.

We have previously held the following types of murders to warrant submission of the (e)(9) aggravating circumstance:

One type includes killings physically agonizing or otherwise dehumanizing to the victim. *State v. Lloyd*, 321 N.C. 301, 319, 364 S.E.2d 316, 328 (1988). A second type includes killings less violent but "conscienceless, pitiless, or unnecessarily torturous to the victim," *State v. Brown*, 315 N.C. 40, 65, 337 S.E.2d 808, 826-27 (1985)[, *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988)], including those which leave the victim in her "last moments aware of but helpless to prevent impending death," *State v. Hamlet*, 312 N.C. 162, 175, 321 S.E.2d 837, 846 (1984). A third type exists where "the killing demonstrates an unusual depravity of mind on the part of the defendant beyond that normally present in first-degree murder." *Brown*, 315 N.C. at 65, 337 S.E.2d at 827.

*Gibbs*, 335 N.C. at 61-62, 436 S.E.2d at 356.

In the present case, the State's evidence tended to show that defendant lured the victim to a rural location where he knew they would be alone. *See Lloyd*, 321 N.C. at 319, 364 S.E.2d at 328 (defendant killed victim at a time he knew victim would be alone). Without provocation, defendant then beat the victim to death with a shovel handle and a tire iron, supporting an inference that the murder was conscienceless and pitiless. *See State v. Ingle*, 336 N.C. 617, 641-42, 445 S.E.2d 880, 893 (1994), *cert. denied*, 514 U.S. 1020, 131 L. Ed. 2d 222 (1995). Defendant inflicted several blunt-force injuries to the victim's head, causing the victim's skin to split and leaving jagged fractures of bone underneath the victim's forehead, beneath his left eye, and across the bridge of his nose. Defendant also caused the skin to split and the bone to fracture above the victim's ear. The force of the blows inflicted upon the victim by the defendant caused the shovel handle to break in half. The record also reveals that defendant tied the victim's hands behind his back and tied his right foot up to his shoulder area. This evidence supports an inference that the victim was left in his " 'last moments aware of but helpless to prevent impending death.' " *Gibbs*, 335 N.C. at 61-62, 436 S.E.2d at 356 (quoting *Hamlet*, 312 N.C. at 175, 321 S.E.2d at 846). This inference is buttressed by evidence that, upon returning to his residence, defendant told Varden he needed to return to the cornfield to see if the victim was alive because he had not checked his pulse. Defendant's statement to Varden indicates defendant's personal belief that the

victim might have lived through the severe beating as he lay tied up on the ground. Viewed in the light most favorable to the State, the evidence in this case supports the trial court's submission of the (e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel. This assignment of error is overruled.

[15] By assignment of error, defendant contends the trial court erred when it allowed the State's expert witness to give inherently unreliable opinion testimony. At the sentencing proceeding, Dr. Sporn was qualified as an expert in forensic pathology. During direct examination, Dr. Sporn explained that he did not perform the autopsy on the victim's body but that he did review Dr. Thompson's autopsy report, a transcript of Dr. Thompson's prior testimony, and the autopsy photographs. As Dr. Sporn testified concerning his observations of the autopsy photographs, defense counsel requested an opportunity to question Dr. Sporn outside the presence of the jury. After extensive questioning by both the prosecution and defense counsel outside the presence of the jury, the trial court allowed Dr. Sporn to describe to the jury the nature of the victim's injuries. Dr. Sporn testified, among other things, that the victim received "clearly several, more than two," blunt-force injuries and that the injuries could have been caused by a baseball bat, a shovel handle, or a tire iron.

Defendant contends that Dr. Sporn's testimony was inherently unreliable and that its admission violated his constitutional rights. Pursuant to Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure, however, "a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make" in order to preserve a question for appellate review. N.C. R. App. P. 10(b)(1). During defense counsel's *voir dire* of Dr. Sporn, the trial court specifically asked defense counsel whether they had any objections to the proposed testimony of Dr. Sporn. One of defendant's attorneys responded, "It's not that I don't have any objections, I mean, if I could think of a legal basis for it, I'd be making it." Thereafter, when Dr. Sporn testified before the jury, defense counsel failed to object. Accordingly, defendant has failed to preserve this assignment of error for appellate review. In addition, this Court will not review defendant's constitutional argument because the issue was not " 'raised and determined in the trial court.' " *State v. Nobles*, 350 N.C. 483, 495, 515 S.E.2d 885, 893 (1999) (quoting *State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985)). Finally, defendant has failed to assert plain

error on appeal. *See* N.C. R. App. P. 10(c)(4). Therefore, this assignment of error is overruled.

**[16]** In a related assignment of error, defendant contends the trial court erred when it overruled defendant's objections to the prosecutor's improper cross-examination of Dr. Sporn outside the presence of the jury. Specifically, defendant argues the prosecutor improperly led Dr. Sporn during cross-examination in such a manner that the prosecutor testified for the witness. Defendant contends the challenged cross-examination violated his due process rights.

The record reveals that defendant objected twice during the prosecutor's cross-examination of Dr. Sporn, as follows:

[PROSECUTOR]: All right. Now, did you, now this examination that you did, based on the evidence . . . now, Mr. Lynch asked you some questions and you gave some answers. Certainly your opinion might be . . . .

[DEFENSE COUNSEL]: . . . OBJECTION to his testifying, now, this is voir dire. That's when he's (Unintelligible) testify (sic).

THE COURT: OVERRULED.

[PROSECUTOR]: Certainly your opinion would be, in other words, it would be better if you had actually examined the body, is that correct?

[DR. SPORN]: Well, for, for giving an opinion as to the precise number of blows, yes.

[PROSECUTOR]: Yes. But, the fact that you did not actually examine the body does not prevent you from forming an opinion to a reasonable degree or medical certainty as to the questions I asked you about the nature of the wounds, the number of wounds, and whether these objects which have been previously introduced could have caused those wounds, is that correct?

[DEFENSE COUNSEL]: OBJECTION. May I be heard on the objection?

THE COURT: Yes.

[DEFENSE COUNSEL]: Here's my objection. We have a, a, an expert who has said himself that his opinion could be inherently unreliable. We have a lawyer[] who is not a doctor or a patholo-

gist making such leading questions that he is suggesting to him how to get to where he couldn't get to on his own knowledge, and I OBJECT to that.

THE COURT: Well, I SUSTAIN the question.

[DEFENSE COUNSEL]: You sustained the question?

THE COURT: I'm going to SUSTAIN the . . . .

[DEFENSE COUNSEL]: . . . yes, sir . . . .

THE COURT: . . . the question that you just asked.

Based on this record, the precise nature of defendant's first objection is unclear. In any event, the prosecutor restated the same question and the trial court ultimately sustained defendant's second objection to the manner in which the prosecutor was leading Dr. Sporn. "Where the trial court sustains a defendant's objection, he has no grounds to except." *State v. Woods*, 345 N.C. 294, 311-12, 480 S.E.2d 647, 655, *cert. denied*, 522 U.S. 875, 139 L. Ed. 2d 132 (1997); *accord State v. Quick*, 329 N.C. 1, 29, 405 S.E.2d 179, 196 (1991). In addition, we note that, both during *voir dire* and before the jury, defendant similarly asked Dr. Sporn whether his opinions would have been better formed if he had personally examined the victim's body. " 'Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.' " *Trull*, 349 N.C. at 446, 509 S.E.2d at 191 (quoting *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995)). Therefore, defendant has waived his right to raise this objection on appeal. Even assuming *arguendo* that this issue was properly preserved and that the trial court committed error, we nonetheless conclude that the challenged cross-examination did not prejudice defendant, as it occurred outside the presence of the jury. Moreover, defendant did not object to Dr. Sporn's testimony before the jury. This assignment of error is overruled.

[17] By assignment of error, defendant contends the short-form murder indictment violated his federal constitutional rights as it failed to allege all the elements of first-degree murder. At the outset, we note defendant did not challenge the murder indictment in the trial court. Constitutional questions "not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). As a general rule, a defendant waives an attack on the indictment when the indictment is

not challenged at trial. *State v. Robinson*, 327 N.C. 346, 361, 395 S.E.2d 402, 411 (1990). However, when an indictment is alleged to be facially invalid, thereby depriving the trial court of its jurisdiction, it may be challenged at any time, notwithstanding a defendant's failure to contest its validity in the trial court. *State v. Braxton*, 352 N.C. 158, 173, 531 S.E.2d 428, 436-37 (2000), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 797 (2001). Thus, this issue is properly before this Court.

[18] In support of his challenge to the validity of the murder indictment, defendant cites the United State Supreme Court's decision in *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999). We have repeatedly addressed and rejected defendant's argument. *See, e.g., Braxton*, 352 N.C. 158, 531 S.E.2d 428. In *Braxton*, this Court examined the validity of short-form indictments in light of the United States Supreme Court's decisions in *Jones*, 526 U.S. 227, 143 L. Ed. 2d 311, and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), and concluded that nothing in either case altered prior case law on these matters. *Braxton*, 352 N.C. at 175, 531 S.E.2d at 437-38. Defendant has presented no compelling basis for this Court to revisit the issue in the present case. Accordingly, this assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises four additional issues that he concedes this Court has previously decided contrary to his position: (1) the trial court committed prejudicial error when it failed to direct jurors to consider and give appropriate effect to mitigating evidence; (2) the trial court's instruction to the jury that defendant's evidence of mitigating circumstances simply had to "satisfy" the jury was so inherently ambiguous and vague that it violated defendant's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; (3) the North Carolina death penalty statute is unconstitutional; and (4) the trial court committed reversible error when it instructed the jury to decide whether nonstatutory mitigating circumstances have mitigating value. Defendant makes these arguments in order to allow this Court to reexamine its prior holdings and to preserve these issues for any possible further judicial review. We have thoroughly considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, these assignments of error are overruled.

## PROPORTIONALITY REVIEW

**[19]** Having concluded that defendant's capital sentencing proceeding was free from prejudicial error, we are required to review and determine: (1) whether the record supports the jury's finding of any aggravating circumstances upon which the sentence of death was based; (2) whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

In the present case, defendant was convicted of first-degree murder on the basis of malice, premeditation, and deliberation and under the felony murder rule. Following a capital sentencing proceeding, the jury found four aggravating circumstances: (1) the murder was committed while defendant was engaged in the commission of kidnapping, N.C.G.S. § 15A-2000(e)(5); (2) the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6); (3) the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (4) the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11).

Five statutory mitigating circumstances were submitted for the jury's consideration: (1) the defendant has no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (2) the murder was committed while the defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (3) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, N.C.G.S. § 15A-2000(f)(6); (4) the age of the defendant at the time of the crime, N.C.G.S. § 15A-2000(f)(7); and (5) the catchall mitigating circumstance that there existed any other circumstance arising from the evidence which the jury deems to have mitigating value, N.C.G.S. § 15A-2000(f)(9). Of these statutory mitigating circumstances, the jury found only (f)(1) and (f)(9) to exist. Of the eighteen nonstatutory mitigating circumstances submitted by the trial court, one or more jurors found the following: (1) defendant has shown a character of peacefulness and respect toward others throughout his life prior to the date of the murder, (2) defendant has shown his ability to adjust to prison life throughout his period of incarceration, (3) defendant is ideally suited by temperament to a highly structured environment,

STATE v. CALL

[353 N.C. 400 (2001)]

and (4) defendant has difficulties in maintaining close interpersonal relationships.

After thoroughly examining the record, transcript, and briefs in this case, we conclude the evidence fully supports the aggravating circumstances found by the jury. Further, there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We turn now to our final statutory duty of proportionality review.

The purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). In conducting our proportionality review, we compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

We have found the death sentence disproportionate in seven cases: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We conclude this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. Defendant was convicted of first-degree murder on the basis of malice, premeditation, and deliberation and under the felony murder rule. We have recognized that "a finding of premeditation and deliberation indicates 'a more calculated and cold-blooded crime.' " *State v. Harris*, 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994) (quoting *Lee*, 335 N.C. at 297, 439 S.E.2d at 575), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995). Moreover, in none of the cases held disproportionate by this Court did the jury find the existence of four aggra-

vating circumstances. In the present case, however, the jury found that the (e)(5), (e)(6), (e)(9), and (e)(11) aggravating circumstances existed.

We also compare the present case with cases in which this Court has found the death penalty to be proportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty of proportionality review, "we will not undertake to discuss or cite all of those cases each time we carry out the duty." *Id.*; *accord State v. Gregory*, 348 N.C. 203, 213, 499 S.E.2d 753, 760, *cert. denied*, 525 U.S. 952, 142 L. Ed. 2d 315 (1998).

There are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to support a sentence of death. *See State v. Warren*, 347 N.C. 309, 328, 492 S.E.2d 609, 619 (1997), *cert. denied*, 523 U.S. 1109, 140 L. Ed. 2d 818 (1998). The (e)(5), (e)(9), and (e)(11) statutory aggravating circumstances, which the jury found here, are among those four. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). Therefore, we conclude that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

Whether a sentence of death is "disproportionate in a particular case ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Green*, 336 N.C. at 198, 443 S.E.2d at 47. Therefore, based upon the characteristics of this defendant and the crimes he committed, we are convinced that the sentence of death recommended by the jury and ordered by the trial court in the instant case is not disproportionate.

Accordingly, we conclude defendant received a fair capital sentencing proceeding, free from prejudicial error. The sentence of death recommended by the jury and entered by the trial court must therefore be left undisturbed.

NO ERROR.